THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| THE CHEROKEE NATION and ) <br> CHEROKEE NATION ) <br> ENTERTAINMENT, LLC, ) <br> ) <br>           Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> KENNETH L. SALAZAR, in his official ) <br> Capacity as Secretary of the Interior, and ) <br> MICHAEL S. BLACK, in his official ) <br> capacity as Acting Secretary for Indian ) <br> Affairs ) <br> ) <br>           Defendants. ) | Case No. 12-cv-493-GKF-TLW |

**OPINION AND ORDER**

Before the Court is defendants' Motion to Compel Return of Inadvertently Produced Documents and Memorandum in Support. (Dkt. # 54). Defendants' motion seeks the return of twenty documents that they claim are privileged and were inadvertently disclosed to plaintiffs. Id. Because defendants' motion did not specify that the parties had conferred before the motion was filed, the Court directed the parties to meet and confer to attempt to resolve the discovery dispute. Id. Through a joint notice filed with the Court, the parties stated that they were able to resolve the dispute with respect to nineteen of the twenty documents. (Dkt. # 59). Thereafter, plaintiffs filed a response addressing the single document still at issue. (Dkt. # 62). The Court held a hearing on March 20, 2013. (Dkt. # 69).

**Background Information and Relevant Facts**

Plaintiffs' lawsuit seeks declaratory and injunctive relief from an administrative agency decision, dated July 30, 2012, in which the Department of the Interior approved the acquisition of a parcel of land into trust for use by the United Keetoowah Band Corporation, which had been

operating a casino on the property. (Dkt. # 2). Plaintiffs argue that the agency's decision was "unlawful, unwarranted by the facts, and in excess of its authority. . . ." (Dkt. # 2 at 17). Plaintiffs have challenged a number of the findings in the agency decision. (Dkt. # 2 at 18-34).

Because the lawsuit was filed pursuant to the Administrative Procedure Act ("APA"), defendants "compiled and certified an administrative record that contains the documents directly or indirectly considered by the decision maker in this case. . . ." (Dkt. # 54). See also 5 U.S.C. § 706. In their motion, defendants contend that the disputed document was initially included in the privilege log and should have been withheld from disclosure. (Dkt. # 54). However, in compiling the administrative record, "the coding for the documents and internal links to the index were altered," resulting in the inadvertent production of twenty documents, including the disputed document. (Dkt. # 54 at 1-2).

The document at issue contains a string of five emails and a "briefing paper." (Dkt. # 62, Ex. 1). The email string is dated July 23 and 24, 2012, and originates from Bryan Newland, Senior Policy Advisor to the Assistant Secretary – Indian Affairs. (Dkt. # 62, Ex. 1). In that email, Mr. Newland requests "a very short briefing paper on the UKB fee to trust application." (Dkt. # 62, Ex. 1). To assist in preparation of the briefing paper, Mr. Newland attached a template, which was not included in the document. Id. One of the recipients of that email, Scott Keep, responded that he was preparing the draft. Id. Mr. Keep's email signature states that he works for the Division of Indian Affairs, Office of the Solicitor. Id. On July 24, 2012, Mr. Keep forwarded a copy of the "briefing paper" to the original recipients of the email. Id. Mr. Keep's email reads as follows: "Attached is my rough draft. Mike has not yet seen it but it is due at noon so any comments would be appreciated." Id.

The briefing paper is a two-page document titled "United Keetoowah Band of Cherokee Indians Trust Acquisition." (Dkt. # 62, Ex. 1). The briefing paper (1) addresses the agency's decision to approve the application to place the land into trust; (2) covers the background regarding the history of the United Keetoowah Band and the application at issue; (3) provides an "Overview of Analysis" that outlines the agency's reasons for granting the application; and (4) cites two "Noteworthy Issues" that separate this decision from previous Department of Indian Affairs' decisions. Id.

In their motion, defendants argue that the documents at issue were inadvertently disclosed and that defendants are entitled to an order compelling plaintiffs to return the documents and allowing defendants to file an amended administrative record that excludes the inadvertently disclosed documents. (Dkt. # 54). Defendants contend that they took proper steps to rectify the inadvertent production once they discovered it and that they are entitled to relief under Federal Rule of Civil Procedure 26(b)(5)(B) and Federal Rule of Evidence 502. (Dkt. # 54). Defendants invoke the attorney-client privilege and the deliberative process privilege as the basis for recovering the documents.[1] Id.

In their response, plaintiffs advise the Court that the "meet and confer" resolved most of the dispute. Only the July 23-24, 2012 emails and the briefing paper remain at issue. (Dkt. # 62). Plaintiffs state that they agreed during the meet and confer that the email messages qualified as "attorney comments or opinions" and offered to have those messages redacted "if the two page briefing paper remains part of the Administrative Record as it should." (Dkt. # 62 at 4).

---

[1] The motion applies these arguments generally to all of the documents at issue; therefore, the Court applies those arguments to the sole document still at issue after the "meet and confer" – the string of emails and the briefing paper.

3

Plaintiffs argue, however, that the emails and the briefing paper are not subject to either the attorney-client privilege or the deliberative process privilege. (Dkt. # 62). Plaintiffs contend that the email messages contain no legal advice or information that could reveal client confidences. Id. With respect to the briefing paper, plaintiffs argue that Mr. Keep's role as "in-house counsel" requires heightened scrutiny. (Id., quoting Lindley v. Life investors Ins. Co., 267 F.R.D. 382, 389 (N.D.Okla. 2010)). Plaintiffs imply, but do not argue specifically, that this heightened scrutiny weighs against applying the attorney-client privilege to the briefing paper. (Dkt. # 62). Plaintiffs also argue that the deliberative process privilege does not apply because the briefing paper, on its face, indicates that the decision to take the property into trust was already made; therefore, "[t]he disputed document does not focus on the predecisional process," which is a requirement for the application of the deliberative process privilege. (Dkt. # 62 at 7).

At the hearing, defendants maintained that both the attorney-client privilege and the deliberative process privilege apply to the document containing the July 23-24, 2012 emails and the briefing paper. (Dkt. # 69, Hearing on Motion to Compel, Jody Schwarz). Defendants argued that the briefing paper was drafted by an attorney and contains the legal reasons that support the acquisition of the land in trust, thereby qualifying the document as subject to the attorney-client privilege. Id. The Court asked defendants to identify language in the briefing paper that was analytical rather than merely a historical recitation of the facts of the case and previous agency decisions. (Dkt. # 69, Hearing on Motion to Compel, United States Magistrate Judge T. Lane Wilson). Defendants argued that the portions of the briefing paper titled "Overview of Analysis" and "Noteworthy Issues" contain advice that explained how the Assistant Secretary would formulate his decision. (Dkt. # 69, Hearing on Motion to Compel, Jody Schwarz). Defendants admitted that the briefing paper does not explicitly state that its contents are intended to provide

4

advice to the Assistant Secretary; however, defendants argued that the briefing paper, in the context of the events occurring at the time, demonstrate that the briefing paper was intended to advise the Assistant Secretary and assist him in making his decision. (Dkt. # 69, Hearing on Motion to Compel, Jody Schwarz). Plaintiffs, on the other hand, argued that the briefing paper more closely resembled a factual recitation or a "talking points" memo. (Dkt. # 69, Hearing on Motion to Compel, Stephen Douglas Dodd). Plaintiffs also stated that without seeing the template attached to the original email, they cannot determine whether the briefing paper contains advice or whether its content merely mimics the template. Id.

Alternatively, defendants argued that the briefing paper is subject to the deliberative process privilege. (Dkt. # 69, Hearing on Motion to Compel, Jody Schwarz). Defendants argued that the briefing paper was written in order for the Assistant Secretary and others involved in the decision-making process to look at the reasoning behind the decision prior to its release. Id. Ms. Schwarz contended that the decision was not "set in stone" at the time the briefing paper was drafted, but she also acknowledged that the date of the final decision was not determinative of the requirement that the briefing paper be predecisional. Id. In support, defendants cited to the draft itself, noting that the language indicates that there was some question about the Secretary's ability to acquire the land in trust. Id. Plaintiffs argued that the draft indicates that the briefing paper is not predecisional, citing the first paragraph, which contains the Secretary's final decision regarding the matter, as well as the use of past tense language in the analysis section, which also indicates a final decision. (Dkt. # 69, Hearing on Motion to Compel, Stephen Douglas Dodd). Plaintiffs also stated that this draft was the only one in the administrative record, but defendants stated that they believed a subsequent draft had been included in the record. (Dkt. # 69, Hearing on Motion to Compel, Jody Schwarz and Stephen Douglas Dodd).

At the end of the hearing, the Court asked defendants to submit a copy of the template for *in camera* review, as well as any other evidence, including affidavits, that support their claims of privilege. (Dkt. # 69, Hearing on Motion to Compel, United States Magistrate Judge T. Lane Wilson). Defendants made their *in camera* submission, which included the template, on March 22, 2013.

## ANALYSIS

**Deliberative Process Privilege**

The deliberative process privilege protects "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated" from discovery. NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150, 92 S.Ct. 1504, 44 L.Ed.2d 29 (1975) (internal quotations and citation omitted). The privilege exists to "protect[] open and frank discussion" among agency personnel in order "to enhance 'the quality of agency decisions.'" Department of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8-9 (2001) (quoting Sears, Roebuck, 421 U.S. at 151). The privilege serves the secondary purpose of "prevent[ing] the premature disclosure of proposed policies, and avoids 'misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action.'" Trentadue v. Integrity Comm., 501 F.3d 1215, 1226 (10th Cir. 2007) (quoting Coastal States Gas Corp. v. Department of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980)). The privilege protects both intra-agency and inter-agency documents. See Renegotiation Bd. v. Grumman Aircraft Engineering Corp., 421 U.S. 168, 188, 95 S.Ct. 1491, 44 L.Ed. 2d 57 (1975).

To qualify for protection under the privilege, the party seeking to invoke the privilege bears the burden of proving that the document at issue is both predecisional and deliberative.

6

Trentadue, 501 F.3d at 1226, 1227 (citations omitted). The case law does not articulate a specific burden of proof imposed on an agency, but an agency can meet its burden through the submission of evidence such as affidavits, a detailed privilege log, and other evidence. See, e.g., Loving v. Department of Defense, 550 F.3d 32, 41 (D.C. Cir. 2008); Boyd v. Department of Justice, 475 F.3d 381, 392 (D.C. Cir. 2007); Coastal States, 617 F.2d at 861. Even if an agency meets its burden, however, the privilege is a qualified one and can be "overcome by a sufficient showing of need." In re Sealed Case, 121 F.3d 729, 738 (D.C. Cir. 1997).

**Predecisional**

A document is predecisional if it is "'prepared in order to assist an agency decisionmaker in arriving at his decision.'" Trentadue, 501 F.3d at 1227 (quoting Renegotiation Bd., 421 U.S. at 184). Defendants raise two primary arguments to support their contention that the emails and briefing paper are predecisional. First, defendants note that the emails and the briefing paper were drafted and circulated on July 23 and 24, 2012, prior to the agency's final decision on July 30, 2012. Second, defendants argue that the language of the briefing paper and the larger context of the events leading up to the decision support a finding that the emails and briefing paper are predecisional because they indicate that the decision was not yet final and was subject to revision. In support, defendants have submitted the string of emails, the template referenced in the first email, and a revised privilege log for *in camera* review. Plaintiffs disagree. They argue that in spite of the date of the emails and briefing paper, the language of the briefing paper indicates that the decision had already been made and, thus, that the briefing paper was not predecisional.

The emails and briefing paper were written approximately one week prior to the final agency decision. Several circuits, including the District of Columbia Circuit, apply a temporal

7

test. See, e.g., Enviro Tech Int'l v. United States Environmental Protection Agency, 371 F.3d 370, 375 (7th Cir. 2004) (stating that a predecisional document is "'actually [a]ntecedent to the adoption of an agency policy,'") (citations omitted); Texaco Puerto Rico, Inc. v. Department of Consumer Affairs, 60 F.3d 867, 884 (1st Cir. 1995); National Wildlife Fed'n v. United States Forest Svc., 861 F.2d 1114, 1117 (9th Cir. 1988); Senate of the Commonwealth of Puerto Rico on Behalf of Judiciary Comm. v. United States Dep't of Justice, 923 F.2d 574, 585 (D.C. Cir. 1987) (holding that "[a] document is 'predecisional' if it precedes, in temporal sequence, the 'decision' to which it relates.").

The Tenth Circuit has not adopted a temporal test. Instead, the Tenth Circuit has indicated that courts should consider the substance of the document and the circumstances of each case. See Casad v. United States Dep't of Health & Human Svcs., 301 F.3d 1247, 1252 (10th Cir. 2002). In Casad, the Tenth Circuit cited two factors that are "helpful" in determining whether a document is predecisional: (1) "the 'nature of the decisionmaking authority vested in the officer or person issuing the disputed document;'" and (2) "the relative positions in the agency's 'chain of command' occupied by the document's author and recipient." Casad, 301 F.3d at 1252) (citations omitted).[2] Additionally, at least one district court within the Tenth Circuit has interpreted the Supreme Court's holding in Sears, Roebuck as rejecting the temporal test. See Securities and Exchange Comm'n v. Naccio, 704 F.Supp.2d 1099, 1110-1111 (D.Colo. 2010). In Naccio, the district court held that the predecisional test "is one that requires examination of the advice being given, its connection to an agency decision, and the purpose that advise [sic] is intended to serve. The fact that the discussion post-dates a particular decision does not automatically render that discussion discoverable." Naccio, 704 F.Supp.2d at 1110. The

---

[2] Notably, the Tenth Circuit derives these factors from cases issued from the District of Columbia Circuit Court, which applies a temporal test.

Supreme Court, in Sears, Roebuck, did acknowledge that "the line between pre-decisional documents and postdecisional documents may not always be a bright one" and cited circumstances in which even a final agency decision could be considered predecisional if it functioned as a guide for cases yet to be determined. Sears, Roebuck, 421 U.S. at 153, n. 19.

Applying the substantive approach set out by the Tenth Circuit to the predecisional question at issue, the Court finds that defendants have not met their burden of establishing that the emails and briefing paper are predecisional. The Assistant Secretary for Indian Affairs authored the final agency decision at issue in this case. (Dkt. # 28, Ex. 4). His senior policy advisor requested the briefing paper approximately one week before the final agency decision issued. (Dkt. # 62, Ex. 1). Mr. Keep, an attorney within the agency, drafted the briefing paper. Id. When Mr. Keep emailed the briefing paper, he noted that it was a "rough draft" and that he welcomed any comments. Id. Mr. Keep also noted that "Mike" had not reviewed the draft, which implies that Mr. Keep's draft was open to further revision before being forwarded to the Assistant Secretary's office. Id. Although these facts indicate that the briefing paper was not final and did not necessarily have a binding effect on the final agency determination, they are not enough.

The fact that the briefing paper was a rough draft and open to comment may mean that a final decision was still being formulated. It also may mean that the final decision had been reached, but the format and wording were open to comment and revision. Likewise, the fact that "Mike" had not reviewed the draft, may mean that until "Mike" had given his approval, the briefing paper was preliminary and only an initial effort by Mr. Keep to provide his opinion regarding the direction the decision should take. Again however, the contemplated review by Mike may have been for form, not content, indicating that the decision had already been made.

The fact that defendants' privilege log contains a number of entries after July 24, 2012 (the date of the briefing paper) and indicates that revisions to the final decision were made up until its release on July 30, 2012 (dkt. # 28, Ex. 2), also does not assist the Court. Rather, this fact merely begs the questions of whether or not the revisions were substantive or form only. Each of these ambiguities could easily have been addressed by defendants in an affidavit, but despite the Court's invitation, defendants did not submit any evidence to address the ambiguities.

Moreover, certain language in the briefing paper supports plaintiffs' contention that the decision had already been made and that the briefing paper was intended to serve as a talking points memorandum. (Dkt. # 62, Ex. 1). For example, the first sentence of the briefing paper states that "The Assistant Secretary – Indian Affairs *has approved* . . . ." Id. (emphasis added). This past tense language, which is employed throughout the briefing paper, tends to establish that the decision had already been made.[3] Id. Additionally, the final opinion, released on July 30, 2012, applies the same analysis used in the briefing paper, including the sources and citations. (Dkt. # 28, Ex. 2; Dkt. # 62, Ex. 1). Of course, the Court can easily think of an explanation for these facts that would support a finding that the briefing paper is predecisional, but the burden is on defendants, and ambiguous facts which can easily be interpreted to support plaintiffs' arguments cannot meet this burden. Thus, the Court finds that defendants have failed to meet their burden of establishing that the briefing paper is predecisional.

---

[3] The administrative record does not assist in defining when the decision was made. An email from Mr. Newland, written July 10, 2012, states that the Assistant Secretary had told the tribe that the agency "would undertake our very best efforts to reach a decision (positive or negative) by the 30th." (Dkt. # 28, Ex. 17). That email indicates that a final decision had not yet been made, although it is possible – even likely – that the Assistant Secretary would not have disclosed the substance of the decision even if it had been made. Emails from July 27, 2012, however, indicate that the final decision had been made and that the agency was in the process of making final edits and collecting the necessary documents needed to issue the final decision. (Dkt. # 28, Ex. 9 and 10).

**Deliberative**

The Tenth Circuit recognizes that identifying a document as deliberative is a more difficult task. See Trentadue, 501 F.3d at 1227. The Court must review each document and consider both its contents and its context "because the deliberative process privilege is so dependent upon the individual document and the role it plays in the administrative process." Coastal States Gas Corp., 617 F.2d at 867. Documents that are deliberative and, therefore, covered under the privilege include "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." Id. at 866. Factual materials do not qualify as deliberative unless their "disclosure 'would so expose the deliberative process within an agency that it must be deemed exempted.'" Trentadue, 501 F.3d at 1228 (quoting Mead Data, Inc, v. United States Dep't of the Air Force, 566 F.2d 22, 256 (D.C. Cir. 1977)). The Tenth Circuit exempts factual materials only if (1) "they are inextricably intertwined with deliberative materials" or (2) "their disclosure would reveal deliberative material." Id. at 1229.

The briefing paper at issue is largely a factual recitation of the background information used to support the agency's decision to take the property into trust. (Dkt. # 62, Ex. 1). The briefing paper is divided into four sections and summarizes the decision ("Decision"); provides background information on the United Keetoowah Society of Cherokee Indians and the casino currently operated on the property in question ("Background"); summarizes the reasons for the agency's decision ("Overview of Analysis"); and identifies the decision as a novel approach to cases involving Indian lands and trust acquisitions ("Noteworthy Issues"). Id. During the hearing, the Court raised the point that the briefing paper appeared to be a historical recitation. (Dkt. # 69, Hearing on Motion to Compel, United States Magistrate Judge T. Lane Wilson).

11

Defendants did not dispute the Court's statement with respect to the Background section of the briefing paper; however, they argued that the Decision, Overview of Analysis, and Noteworthy Issues sections contain deliberative statements because those sections set forth the legal basis for the ultimate decision. (Dkt. # 69, Hearing on Motion to Compel, Jody Schwarz). Aside from the argument presented at the hearing, defendants presented no other evidence, at the hearing or in the *in camera* submission to support their claim that the briefing paper is deliberative.

More importantly, nothing in the briefing paper indicates that its content is deliberative. The briefing paper contains no opinions, other than the opinion of the Assistant Secretary, who was the final decision-maker and whose opinion is contained in the final decision. (Dkt. # 62, Ex. 1). It does not set forth any suggestions, proposals, or options for consideration as "part of a process by which governmental decisions and policies are formulated." Sears, Roebuck, 421 U.S. at 150. Rather, the briefing paper appears to serve as a factual summary that includes the final decision, which, as the privilege log indicates, was in the final stages of revision. A review of the final decision supports this conclusion, as the final decision tracks the "analysis" and citations in the briefing paper almost verbatim. (Dkt. # 28, Ex. 4). Additionally, the email string, which originated from the Senior Policy Advisor to the Assistant Secretary, does not ask for any suggestions, opinions, or other deliberative action. (Dkt. # 62, Ex. 1). Instead, that email indicates that the "very short briefing paper" is a summary of the draft decision, as it existed on that date. Id. For these reasons, the Court finds that defendants have not met their burden to establish that the briefing paper was deliberative.

Because defendants have not established either prong of the deliberative process privilege test, the privilege does not apply.

**Attorney-Client Privilege**

Defendants also argue that the attorney-client privilege should apply to the email string and the briefing paper because those documents contain legal analysis, which qualifies as advice from the Office of the Solicitor to the Assistant Secretary regarding the formulation of the final decision to take the land into trust. (Dkt. # 54; Dkt. # 69, Hearing on Motion to Compel, Jody Schwarz). During the hearing, defendants cited the "former reservation" issue addressed in the Overview of Analysis and Noteworthy Issues sections of the briefing paper as an example of the legal advice provided. (Dkt. # 69, Hearing on Motion to Compel, Jody Schwarz). Plaintiffs argued at the hearing that the briefing paper resembled a "talking points" paper, not legal advice; however, plaintiffs stated that without seeing the template from the original email, they could not definitively take a position on the issue. (Dkt. # 69, Hearing on Motion to Compel, Stephen Douglas Dodd).

"The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." Upjohn Co. v. United States, 449 U.S.383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) (citation omitted). The privilege "encourage[s] full and frank communications between attorneys and their clients" because an attorney's ability to provide "sound legal advice or advocacy depends upon the lawyer's being fully informed by the client." Id. The privilege covers communications from client to attorney and from attorney to client. See In re Grand Jury Proceedings, 616 F.3d 1172, 1182 (10th Cir. 2010). The privilege, however, is not universal, as it protects only those communications that "relate to legal advice or strategy sought by the client." United States v. Johnston, 146 F.3d 785, 794 (10th Cir. 1998). Defendants, who are seeking to invoke the privilege, bear the burden of proof. See Motley v. Marathon Oil Co., 71 F.3d 1547, 1550 (10th Cir. 1995).

The factual recitations contained in the briefing paper's Decision and Background section do not contain legal advice or strategy, nor do they tend to disclose client confidences. (Dkt. # 62, Ex. 1). Accordingly, that portion of the briefing paper is not subject to attorney-client privilege. The string of emails also does not convey or request, or relate to legal advice, unless the Senior Policy Advisor to the Assistant Secretary was seeking a legal opinion in the briefing paper. Defendants bear the burden of proof on this issue, and as the Court has previously found in considering the deliberative process privilege, the evidence presented to the Court establishes that the briefing paper is a summary of the agency's final decision, not an opinion on the ultimate question. Again, if the contents of the briefing paper are intended to reflect an opinion on the ultimate question or the culmination of legal advice previously sought, defendants could easily have established this fact by affidavit. They did not.

The Overview of Analysis and Noteworthy Issues sections of the briefing paper are a closer question. Defendants correctly state that these sections of the briefing paper contain legal analysis insofar as they set forth the reasons that support the decision to acquire the property in trust for gaming purposes. However, the context of the briefing paper, as well as its content, indicates that the briefing paper is the summary of a decision already made but not yet released to the public. In addition, one would expect some indication on the briefing paper itself or in the transmitting email that the content was subject to the attorney client privilege if, in fact, it was. Most importantly, defendants could have established this fact through an affidavit. For whatever reason, they chose not to. Thus, defendants have failed to meet their burden of proving that the emails and briefing paper qualify as a request for, or the receipt of, legal advice, and the Court finds that these sections of the briefing paper are not legal advice given to the Assistant Secretary to aid in his decision.

Finally, even assuming the legal analysis contained in the briefing paper is the culmination of the Solicitor's Office advice to the Assistant Secretary, defendants waived any privilege attached to that analysis when they released it, almost verbatim, to the public in the form of the final decision of the Assistant Secretary. See <u>In re Grand Jury Proceedings</u>, 616 F.3d at 1184 (holding that the privilege is waived when a client voluntarily discloses the privileged information).

## CONCLUSION

For the reasons set forth in this Order, defendants' Motion to Compel Return of Inadvertently Produced Documents (dkt. # 54) is **DENIED**.

SO ORDERED this 30th day of April, 2013.

_____
T. Lane Wilson
United States Magistrate Judge