IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF OKLAHOMA


THE CHEROKEE NATION, et al.,        )
                                    )
            Plaintiffs,             )
                                    )
-vs-                                ) No. 12-CV-493-GKF-TLW
                                    )
KENNETH L. SALAZAR, et al.,         )
                                    )
            Defendants.             )




TRANSCRIPT OF PRELIMINARY INJUNCTION HEARING

**BEFORE THE HONORABLE GREGORY K. FRIZZELL**
**UNITED STATES DISTRICT JUDGE**

AUGUST 12, 2013








REPORTED BY:            *BRIAN P. NEIL, RMR-CRR*
                        *United States Court Reporter*

A P P E A R A N C E S

Amelia A. Fogleman and David E. Keglovits, attorneys at law, Gable & Gotwals, 100 West 5th Street, Suite 1100, Tulsa, Oklahoma, 74103, attorneys on behalf of the Plaintiff Cherokee Nation Entertainment, LLC;

Stephen D. Dodd and William D. McCullough, Jr., attorneys at law, Doerner, Saunders, Daniel & Anderson, Two West Second Street, Suite 700, Tulsa, Oklahoma, 74103, attorneys on behalf of the Plaintiff Cherokee Nation;

Todd Hembree, Attorney General, Cherokee Nation, 17675 South Muskogee Avenue, Tahlequah, Oklahoma, 74465, attorney on behalf of the Plaintiff Cherokee Nation;

Jody H. Schwarz, attorney, U.S. Department of Justice, 601 D Street N.W., Washington, D.C., 20004, attorney on behalf of the Defendants Salazar and Black;

Christina M. Vaughn and James C. McMillin, attorneys at law, McAfee & Taft, 1717 South Boulder, Suite 900, Tulsa, Oklahoma, 74119, attorneys on behalf of the Intervenor Defendant UKB.

1          Monday, August 12, 2013

2                   *  *  *  *  *

3          DEPUTY COURT CLERK:  We're here in the

4    matter of the Cherokee Nation, et al., v. Kenneth L.

5    Salazar, et al., Case No. 12-CV-493-GKF.  Will the

6    parties please enter their appearance?

7          MR. MCCULLOUGH:  David McCullough for

8    Cherokee Nation.

9          MR. DODD:  Doug Dodd for Cherokee Nation.

10          MR. HEMBREE:  Todd Hembree, Attorney

11    General for the Cherokee Nation.

12          MR. KEGLOVITS:  David Keglovits on behalf

13    of the Cherokee Nation Entertainment, LLC.

14          MS. FOGLEMAN:  Amelia Fogleman on behalf of

15    Cherokee Nation Entertainment.

16          MR. MCMILLIN:  Jim McMillin on behalf of

17    the United Keetoowah Band of Cherokee Indians in

18    Oklahoma.

19          MS. VAUGHN:  Christina Vaughn, Attorney

20    General for the United Keetoowah Band of Cherokee

21    Indians in Oklahoma.

22          THE COURT:  And on the telephone?

23          MS. SCHWARZ:  It's Jody Schwarz for the

24    Department of Justice.  Also present with me are

25    Barbara Marvin, Maureen Rudolph, and Ed Passarelli Of

1    the Justice Department and also Bethany Sullivan of

2    the Department of the Interior.

3              THE COURT:  Good afternoon.  Let me confer

4    with my law clerk here very briefly.

5              *(Discussion held off the record)*

6              THE COURT:  Before the court is the amended

7    motion for preliminary injunction at docket No. 84

8    filed by the plaintiffs, Cherokee Nation and Cherokee

9    Nation Entertainment, LLC.  The plaintiffs seek an

10   order enjoining defendants Kenneth L. Salazar, as

11   secretary of the Department of Interior, and Michael

12   S. Black, acting assistant secretary for Indian

13   Affairs, pending resolution of this action on the

14   merits, from transferring into trust on behalf of the

15   United Keetoowah Band Corporation -- UKB Corporation

16   referred to by this court for the purposes of this

17   speaking order -- for gaming purposes, a 2.03-acre

18   tract of land located in Cherokee County, Oklahoma, to

19   which the parties refer as the "gaming tract," which

20   lies within the Cherokee Nation's historical treaty

21   territory.

22        The purpose of a preliminary injunction is

23   merely to preserve the relative positions of the

24   parties until a trial on the merits can be held.  The

25   court references *University of Texas v. Camenisch,*

C-a-m-e-n-i-s-c-h, 451 U.S. 390, 395, a 1981 Supreme
Court decision.

To obtain a preliminary injunction, a plaintiff
must show, one, a likelihood of success on the merits;
two, a likelihood that the movant will suffer
irreparable harm in the absence of preliminary relief;
three, that the balance of equities tips in the
movant's favor; and four, that the injunction is the
in the public's interest.  The court cites *Crowe &*
*Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1157 (10th
Cir. 2011).  In deciding this motion, the court has
considered each of these four factors.

First, as to success on the merits, this court's
review of the July 30th, 2012, decision by the
assistant secretary granting the UKB's application to
take the gaming tract into trust is governed by the
Administrative Procedure Act, the APA, Title 5, United
States Code Section 706.

Agency action is arbitrary and capricious under
Section 706 if the agency, No. 1, entirely failed to
consider an important aspect of the problem; No. 2,
offered an explanation for its decision that runs
counter to the evidence before the agency, or is so
implausible that it could not be ascribed to a
difference in view or the product of agency expertise;

No. 3, failed to base its decision on consideration of the relevant factors; or No. 4, made a clear error of judgment.  And the court cites *Hillsdale Environmental Loss Prevention, Inc. v. United States Army Corps of Engineers*, 702 F.3d 1156, 1165 (10th Cir. 2012).

In determining whether an agency action was arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law, the critical question is whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.  *City of Colorado Springs v. Solis*, 589 F.3d 1121, 1131, (10th Cir. 2009).

The APA standard encompasses a presumption in favor of the validity of agency action and thus, the ultimate standard of review is narrow one.  The court is not empowered to substitute its judgment for that of the agency.  *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416 (1971); and *City of Colorado Springs*, 589 F.3d at 1131.  The court is mindful that it should uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.  *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, pages 513-14 (2009).

In his evaluation of the UKB's application to

take the gaming tract into trust, the assistant
secretary had to determine whether he had any basis to
take the land into trust.

Section 5 of the Indian Reorganization Act, the
IRA, at 25 United States Code Section 465, allows the
Secretary of the Interior to acquire lands in trust
for Indians.  In 2009, the United States Supreme Court
in *Carcieri v. Salazar*, 555 U.S. 379 (2009), held that
the Department of Interior cannot accept land into
trust under Section 5 of the IRA for any tribe that
was not "under federal jurisdiction" when the IRA was
enacted in 1934.  Obviously, this is an obstacle for
tribes that were federally recognized after 1934.  I
mention this because the *Carcieri* decision has
ramifications for the UKB, which was not organized
until 1950.

One of the issues the assistant secretary had to
decide in evaluating whether to take the gaming tract
into trust was whether gaming on the tract would be
legal under the Indian Gaming Regulator Act, or IGRA.
IGRA prohibits gaming on Indian lands accepted by the
secretary into trust for the benefit of an Indian
tribe after October 17, 1988, unless the lands fall
within certain statutory exceptions.  In the July 30,
2012, decision, the assistant secretary determined

that gaming on the tract would be permissible under
one of those exceptions, 25 United States Code Section
2719(a)(2)(A)(i), which permits gaming on lands
acquired by the secretary into trust for the benefit
of a tribe after October 17, 1988, if the land is
located in Oklahoma within the boundaries of the
Indian tribe's former reservation as defined by the
secretary.

In reaching this conclusion, the secretary
determined that the -- the assistant secretary
determined -- excuse me -- that the term "former
reservation" was ambiguous as applied to the facts at
hand.  He noted that the applicable regulation at 25
C.F.R. Section 292.2 defines a "former reservation" to
mean lands in Oklahoma that are within the exterior
boundaries of the last reservation that was
established by treaty, executive order, or secretarial
order for an Oklahoma tribe.  He stated that neither
IGRA nor the regulation addressed the question of
whether two federally recognized tribes, one of which
was formed under express congressional authorization
from the citizens of the other, can share the same
former reservation for purposes of qualifying for
IGRA's former reservation exception.  And he stated
that under the expression language of IGRA, the

1    determination was one that he was entitled to make.

2    He found that for purposes of IGRA, the former

3    reservation of the Cherokee Nation is also the former

4    reservation of the UKB, and concluded on that basis

5    that gaming could take place on the gaming tract.

6         Under 25 C.F.R. Section 151.10, the assistant

7    secretary also had to determine whether there was

8    statutory authority for the acquisition.  He concluded

9    that the statutory authority for this acquisition was

10   Section 3 of the Oklahoma Indian Welfare Act, Title 25

11   United States Code Section 503.  Section 3 of the act

12   allows recognized tribes or bands of Indians residing

13   in Oklahoma to, among other things, obtain from the

14   Department of Interior charters of incorporation, and

15   it provides that such chartered corporations are

16   entitled to enjoy "any rights or privileges secured to

17   the organized Indian tribe under the act of June 18,

18   1934."

19        The assistant secretary found this statute

20   implicitly authorizes the secretary to take land into

21   trust for the UKB Corporation.  In support of this

22   finding, he cited a series of decisions made in a

23   separate application by the UKB to the Department of

24   Interior to take the 76-acre community services parcel

25   into trust.  In those decisions, the assistant

1    secretary requested additional briefing on the impact

2    of *Carcieri* and offered the UKB three options to

3    secure the benefit of trust ownership, one of which

4    was to have the secretary take the land in trust for

5    the UKB Corporation as opposed to the UKB tribe.

6    Ultimately, in the 76-acre tract matter, he determined

7    land could be taken into trust for the UKB Corporation

8    under Section 3 of the Oklahoma Indian Welfare Act.

9        A third issue the assistant secretary had to

10   address was whether the consent of the Cherokee Nation

11   would be required in order to take the land into trust

12   for the UKB Corporation.  Under 25 C.F.R. Section

13   151.8, if the land at issue is on a reservation other

14   than its own, then the consent of the tribe having

15   jurisdiction over the reservation must be obtained.

16   The assistant secretary acknowledged that in the past,

17   consistent with this regulation, the department had

18   declined to take any lands into trust for the UKB

19   within the boundaries of the former Cherokee

20   reservation without the consent of the Cherokee

21   Nation.  But he concluded "now that we have determined

22   the former reservation of the Cherokee Nation is also

23   the former reservation of the UKB for purposes of

24   applying the IGRA exception, the Cherokee Nation's

25   consent was no longer required."

1    The plaintiffs attack the 2012 decision on three
2 bases.  First, they argue that the 2012 decision
3 relies on unprecedented and legally unsupported
4 rationales advanced for the first time in the history
5 of trust application approval.  Second, they contend
6 the assistant secretary's conclusion that the Oklahoma
7 Indian Welfare Act authorizes a trust application for
8 the UKB Corporation is contrary to law.  And third,
9 they argue that the assistant secretary's conclusion
10 that the Cherokee Nation's former reservation is
11 shared by the UKB is contrary to law.
12    The assistant secretary's determination that he
13 could rely on Section 3 of the OIWA to acquire land in
14 trust for the UKB is unprecedented, other than with
15 respect to the 76-acre tract decision that is now on
16 appeal with the Interior Board of Indian Appeals.
17 These two decisions are the first to find authority to
18 acquire land in trust pursuant to Section 3 of the
19 OIWA.  They mark the first trust acquisitions approved
20 for a tribal corporation of a tribe first recognized
21 after 1934.  This decision is also the first time the
22 department has recognized a tribe and a band as having
23 the same former reservation for purposes of qualifying
24 for the exception in IGRA for acquiring land in trust
25 after 1988.

1    To be sure, and as the department argues, the

2  fact that the determination is unprecedented does not

3  necessarily mean its arbitrary and capricious.

4  However, when an agency departs from prior

5  interpretation of a statute it is charged with

6  implementing, the agency must justify the change of

7  interpretation with a reasoned analysis.  *Public Lands*

8  *Council v. Babbitt*, 167 F.3d 1287, 1306, (10th Cir.

9  1999), quoting *Motor Vehicle Manufacturers Association*

10  264 U.S. at 42.

11    In this case, the assistant secretary failed to

12  adequately explain his reasoning or to reconcile his

13  decision with prior inconsistent holdings by the

14  Department of Interior itself and by courts and with

15  Interior's own regulations.  Therefore, the court

16  concludes the decision is arbitrary and capricious.

17    Bear in mind this is not a final holding, but I

18  am concluding this for purposes of deciding the

19  likelihood of success on the merits and obviously it's

20  not a final decision of this court.

21    The assistant secretary's finding that Section 3

22  of the OIWA implicitly authorizes a trust acquisition

23  for a federal chartered tribal corporation appears to

24  be clearly erroneous and contrary to law.  Section 3

25  of the OIWA provides that tribes may form tribal

1  corporations and that the charters approved by the

2  secretary may convey to the incorporated group and any

3  other rights or privileges secured to an organized

4  Indian tribe under the IRA.  Thus, it merely grants

5  tribal corporations the same rights as the tribes

6  themselves, not greater rights.  Because *Carcieri* made

7  it clear that the UKB has no right to have the land

8  taken into trust under Section 5 of the IRA, Section 3

9  of the Oklahoma Indian Welfare Act cannot create such

10 a right for the benefit of the UKB Corporation and the

11 decision is contrary to the Department of Interior's

12 own regulations.  25 C.F.R. Section 151.3 permits the

13 assistant secretary to acquire land in trust only

14 for "an individual Indian or a tribe."  That's 25

15 C.F.R. Section 151.2(b).  Section 151.2(b) authorizes

16 tribal corporations to be considered tribes under

17 limited circumstances where there is a statute

18 that "specifically" authorizes trust acquisitions for

19 such corporations.  However, the assistant secretary

20 found only implicit authority to take the land into

21 trust for the UKB Corporation.  In short, the UKB

22 Corporation does not meet the definition of tribe in

23 Section 151.2(b).  Thus, the law and implementing

24 regulations do not permit the assistant secretary to

25 take land into trust for the UKB Corporation.

1    The assistant secretary's determination that the

2   Cherokee Nation's "former reservation" is also the

3   former reservation of the UKB under IGRA is arbitrary

4   and capricious in light of the regulation's definition

5   of the term in 25 C.F.R. Section 292.2.  The

6   determination is so implausible it cannot be ascribed

7   to a difference in view or the product of agency

8   expertise.  The UKB has no last reservation

9   established by a treaty, by an executive order, or by

10   a secretarial order.  The administrative agency's

11   decision appears to have ignored the Department of

12   Interior's own previous decisions, case law, and the

13   legal history of the Cherokee Nation, including its

14   treaty rights.

15    Finally, the assistant secretary appears to have

16   erred in applying the Indian canon of construction

17   that "statutes are to be construed liberally in favor

18   of the Indians with ambiguous provisions interpreted

19   to their benefit."  This canon is inapplicable in

20   cases such as this, where an Indian tribe and a band

21   of Indians are on different sides of an issue and

22   construing statute in favor of one group of Indians

23   will adversely impact another group.  *Utah v. Babbitt*,

24   53 F.3d 1145, 1150 (10th Cir. 1995), and *Cherokee*

25   *Nation of Oklahoma*, v. Norton, 241 F.Supp.2d 1374,

1    1380 (N.D. Okla. 2002).

2          Now, as to likelihood of irreparable harm, a

3    plaintiff satisfies the irreparable harm requirement

4    by demonstrating a significant risk that he or she

5    will experience harm that cannot be compensated after

6    the fact by monetary damages.  *RoDa Drilling v.*

7    *Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009).  Purely

8    speculative harm will not suffice, but rather a

9    plaintiff who can show a significant risk of

10   irreparable harm has demonstrated that the harm is not

11   speculative and will be held to satisfy the burden.

12         The court finds that the plaintiffs have

13   demonstrated a significant risk they will suffer

14   irreparable harm that cannot be compensated after the

15   fact by monetary damages.  First, there is no legal

16   certainty that the department could return the gaming

17   tract to fee status after the issuance of a trust deed

18   to the UKB Corporation.  Defendants argue that the

19   Supreme Court's decision in *Patchak v. Salazar*, 132

20   S.Ct. 2199 (2012), ensures that the gaming tract can

21   be successfully taken out of trust should the

22   plaintiffs ultimately prevail on the merits in this

23   case.

24         Both the UKB and the UKB Corporation have

25   submitted resolutions of limited waivers of sovereign

1    immunity.  However, the secretary is not proposing to

2    place the land in trust for the tribe.  The tribal

3    corporation has submitted a resolution approved by

4    only two of its members.  If plaintiffs are correct,

5    the 13 members of the UKB tribal council are the

6    officers of the UKB Corporation.  The resolution

7    purports to establish a limited waiver of sovereign

8    immunity to provide this court with subject matter

9    jurisdiction over the UKB corporate authority for the

10   purposes of equitable relief only.  The UKB

11   Corporation is not a party to this litigation, it has

12   not waived sovereign immunity by fully submitting to

13   the jurisdiction of this court, and the limited waiver

14   approved by only two of the members does not appear to

15   be a valid waiver of sovereign immunity.  Thus, the

16   UKB Corporation could assert objections and defenses

17   to the return of the gaming tract to fee status which

18   could delay or prevent an unwinding of the trust

19   acquisition.

20        Second, the court is persuaded by Mr. Keglovits'

21   argument that if the executive branch takes property

22   from within the historic boundaries of the Cherokee

23   Nation into trust for the UKB Corporation without

24   specific authority from Congress, the executive

25   branch's action would violate the sovereignty granted

to the Cherokee Nation by Congress.  In *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, at 1250, a Tenth Circuit case from 2001, the Tenth Circuit stated "the concept of irreparable harm unfortunately does not readily lend itself to definition."  It noted that irreparable harm is often suffered when the injury cannot be adequately atoned for in money or when the district court cannot remedy the injury following a final determination on the merits.

There, the tribe had instituted its own motor vehicle registration and titling procedures.  In affirming the district court's order enjoining the state from continuing to enforce its registration and titling procedures with respect to the tribe and its members, the Tenth Circuit found that the thread of continuing citation by the state created the prospect of significant interference with tribal self-government.

This court concludes that violation of the Cherokee Nation's sovereignty within the bounds of the historic Cherokee Nation would constitute an unquantifiable but significant risk of irreparable harm, albeit temporary.

Third, the court finds that there is a strong

likelihood that issuance of a trust deed will cause jurisdictional conflicts between the Cherokee Nation and the UKB, including conflicts over law enforcement, as recognized by Ms. Karen Ketcher, the acting regional director of the BIA.

Finally, as the court expressed at last Friday's hearing, the alleged economic damages to plaintiffs if the UKB is allowed to continue operation are too speculative. The court's comments to Mr. Keglovits at the hearing were limited to this sole item of alleged irreparable injury.

As to balancing of harms, after determining the harm that would be suffered by the moving party if the preliminary injunction is not granted, the court must then weigh that harm against the harm to the defendant if the injunction is granted. *Crowe & Dunlevy v. Stidham*, 609 F.Supp.2d 1211, 1224 (N.D. Okla. 2009).

Critical to an evaluation of this element is a determination of what the "status quo" is. The status quo is the last uncontested status between the parties which preceded the controversy until the outcome of the final hearing. The court quotes *Schrier*, 427 F.3d at 1260, quoting *Dominion Video Satellite, Inc. v. EchoStar Satellite Corporation*, 269 F.3d at 1155 (10th Cir. 2001). I'll eliminate the remaining citations

1    here.

2         In determining the status quo for preliminary

3    injunctions, this court looks to the reality of the

4    existing status and relationship between the parties

5    and not solely to the parties' legal rights.  That's

6    *Dominion Video Satellite, Inc.*, 269 F.3d at 1155.

7         Plaintiffs assert the status quo is that the

8    land is in fee status; another Indian tribe or band

9    has never, in the more than 175 years since the

10   Cherokee Nation acquired its reservation in Oklahoma,

11   been authorized by Congress to exercise jurisdiction

12   over land within the Cherokee Nation's historical

13   jurisdictional boundaries; and that is between the

14   Nation, the Department of Interior and the UKB

15   Corporation, the Cherokee Nation is the only Indian

16   tribe exercising governmental jurisdiction over trust

17   lands within its historical boundaries.

18        The secretary and the UKB argue that the status

19   quo is that, legally or illegally, the casino has

20   operated since 1986, and the injunction sought by the

21   plaintiffs would "upset the status quo between the

22   parties by prohibiting the UKB's right to operate its

23   gaming facility at great harm to many other parties."

24        However, as plaintiffs point out, whether the

25   UKB can or cannot conduct gaming activities on the

gaming tract is not an issue before this court and the

UKB had its opportunity to fully litigate that issue

in *UKB v. Oklahoma* in the Eastern District of

Oklahoma, Case No. 04-CV-340.  Originally, the UKB and

the state had entered into an agreement for a one-year

grace period until July 30, 2013, before the state

would enforce its gaming laws.  It became clear by May

or June of 2013 that the gaming tract would not be

taken into trust by July 30, 2013.  Rather than seek

an injunction or extension in the Eastern District

case and litigate its position against the state, the

UKB instead negotiated with the state for a one-time

extension of the agreed closure date from July 30,

2013, to August 30, 2013.

On July 29, 2013, the UKB and the state filed a

joint application to modify the July 10, 2012, agreed

order in the Eastern District case.  In the joint

application, the UKB agreed that the order extending

the closing date would be the final order entered in

that case.  The court entered a minute order granting

the joint application the same day.

Plaintiffs accuse the defendants of attempting

to manufacture a status quo in this action that

involves the continuation of unlawful gaming by the

UKB.

1    In *Dominion Video Satellite*, the court cautioned

2  against a situation where any party opposing a

3  preliminary injunction could create a new status quo

4  immediately preceding the litigation merely by

5  changing its conduct toward the adverse party.  To

6  treat such a new status quo is the relationship, which

7  an injunction should not disturb, would unilaterally

8  empower the party opposing the injunction to impose a

9  heightened burden on the party seeking the injunction.

10    The court declines to adopt the view of the

11  status quo urged by the UKB and the Department of

12  Interior because that status quo was created by the

13  UKB when it entered into its recent agreement with the

14  State of Oklahoma in the Eastern District case.  The

15  status quo is that the land has never been in trust

16  for the UKB and, at least for the time being, it

17  should remain that way.  Therefore, the balancing of

18  harms weighs in favor of plaintiffs.

19    The injunction sought by the plaintiffs would

20  not order a cessation of gaming or a shutdown of the

21  UKB casino, and indeed that is not an issue in this

22  case.  However, in balancing the harms, the court is

23  cognizant of the defendant's argument that entry of a

24  preliminary injunction may ultimately lead to forced

25  closure of the casino which employs hundreds of

1  people.

2        The UKB's predicament is similar to situations

3  presented in patent infringement cases where courts

4  have refused to consider the impact on the patent

5  infringer of an injunction forcing it to stop selling

6  its infringing product.  In *Robert Bosch, LLC v. Pylon*

7  *Manufacturing Corp.*, 659 F.3d 1142, 1156, a Federal

8  Circuit case from 2011, the court reasoned that a

9  party cannot escape an injunction simply because it is

10 smaller than the patentee or because its primary

11 product is an infringing one.  And in a similar patent

12 infringement case, *Windsurfing International, Inc. v.*

13 *AMF, Inc.,* 782 F.2d 995, 1003, n.12, another Federal

14 Circuit case from 1986, the court stated that one who

15 elects to build a business on a product found to

16 infringe cannot be heard to complain if an injunction

17 against continuing infringement destroys the business

18 so elected.

19        And here, a preliminary injunction would not

20 destroy the UKB's desire to have the parcel taken into

21 trust.  It would merely enjoin the secretary from

22 doing so until such time as this legal dispute has

23 been resolved in the UKB's favor.

24        Plaintiffs have made a strong showing of

25 likelihood of prevailing on the merits.  The

1   uncertainty attendant to unwinding a trust

2   transaction, the very real threat to the Cherokee

3   Nation's sovereignty, and the potential for serious

4   jurisdictional conflict are, while not financial in

5   nature, significant factors which must be considered.

6   Further, the conundrum in which the UKB finds itself

7   is largely due to decisions it has made in the Eastern

8   District of Oklahoma case where the UKB negotiated a

9   grace period delaying the state's enforcement of its

10  gaming laws for what was arguably an unrealistically

11  short period of time.  The court, therefore, concludes

12  that the balancing of harms in this case tips in favor

13  of the plaintiffs.

14        Now, as to the public interest, plaintiffs

15  assert granting an injunction would serve the public

16  interest for two reasons.  First, the public interest

17  is served when administrative agencies comply with

18  their obligations under the Administrative Procedure

19  Act.  *North Mariana Islands v. United States*, 686

20  F.Supp.2d 7, 21 (D.D.C. 2009).  The plaintiffs argue

21  that the public interest cannot be served by the

22  Department of Interior's failure to comply with the

23  IRA, the OIWA, and IGRA.

24        Second, Congress has stated the purpose of IGRA

25  was to promote tribal economic development,

self-sufficiency and strong tribal governments, and to
ensure that the Indian tribe was the primary
beneficiary of the gaming operations.  25 United
States Code Section 2702.  The plaintiffs argue that
issuing an injunction would further the purposes of
IGRA, which is concerned with protecting gaming as a
source of Indian economic development.  They contend
that if the executive branch permits the UKB to
operate gaming within the jurisdictional territory of
the Cherokee Nation, congressional policy's undermined
with respect to the second.

Therefore, plaintiffs argue that the public
interest is served by maintaining the status quo,
which they argue is that of the Cherokee Nation being
the only tribe exercising governmental jurisdiction
over trust lands within its historic boundaries.
Citing the same statute, the defendants assert that
the public interest is best served by promoting the
economic development and self-sufficiency of the UKB.

This court concludes that congressional intent
to promote tribal economic development and
self-sufficiency is a neutral factor in this case
because both Indian entities, the Cherokee tribe and
the United Keetoowah Band, contend its own economic
development should be protected.

1      However, because plaintiffs have shown a strong

2   likelihood of prevailing on the merits, the public's

3   interest in having executive agencies comply with

4   their obligations under the APA is best served by

5   entering the preliminary injunction staying the

6   Department of Interior from taking the land into

7   trust.

8      Now, the Tenth Circuit has identified three

9   types of specially disfavored preliminary injunctions

10  as to which a movant must satisfy an even heavier

11  burden of showing that the four preliminary injunction

12  factors weigh heavily and compellingly in movant's

13  favor before such an injunction may be issued.  First,

14  preliminary injunctions that alter the status quo;

15  second, mandatory preliminary injunctions; and third,

16  preliminary injunctions that afford the movant all the

17  relief it could recover at the conclusion of a full

18  trial on the merits.  The court cites *O Centro*

19  *Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*,

20  389 F.3d 973, 975, (10th Cir. 2004) (en banc), later

21  affirmed and remanded by the United States Supreme

22  Court, Gonzales v. *O Centro Espirita Beneficiente*

23  *Uniao Do Vegetal*, 546 U.S. 418 (2006).

24      Any preliminary injunction fitting within one of

25  the disfavored categories must be more closely

scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course.  A party seeking such an injunction must show a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms.  *Schrier v. University of Colorado,* 427 F.3d 1253, 1259 (10th Cir. 2005).

The injunction sought by the plaintiffs is prohibitory rather than mandatory in nature.  Further, the court has found that the injunction sought by the plaintiffs would not alter but instead would preserve the status quo.

The UKB argues that the preliminary injunction sought by plaintiffs would afford them all the relief the plaintiffs could recover at the conclusion of a full trial on the merits, and therefore, it is a disfavored injunction.  Absent some alteration of the agreed order between Oklahoma's Attorney General and the UKB in the Eastern District of Oklahoma action, it appears that a preliminary injunction in this case is likely to result in at least a temporary cessation of the UKB's competing casino operation in Tahlequah.  However, a preliminary injunction will not render a trial on the merits largely or completely meaningless.

In *Prairie Band of Potawatomi Indians v. Pierce,*

253 F.3d 1234, 1237 (10th Cir. 2001), the Tenth
Circuit discussed this issue at some length.  It
stated that the terms all the relief to which the
movant would be entitled, or all the relief sought
have been the source of confusion because read
literally they appear to describe any injunction where
the final relief for the plaintiff would simply be a
continuation of the preliminary relief, and it
concluded that "the only reason to disfavor a
preliminary injunction that grants substantially all
the relief sought is if it would render a trial on the
merits largely or completely meaningless.  Therefore,
all the relief to which a plaintiff may be entitled
must be supplemented by a further requirement that the
effect of the order once complied with cannot be
undone."  The Tenth Circuit gave examples of
preliminary relief that cannot be undone, including a
case involving the live televising of an event
scheduled for the day on which the preliminary relief
is granted or a case involving the disclosure of
confidential information.

In *Prairie Band*, a tribe sought an injunction
prohibiting the state from enforcing its state motor
vehicle registration and titling laws with respect to
the tribe and its members.  The state argued that the

relief sought would afford the tribe substantially all the relief it might recover.  The court, however, held that the preliminary injunction issued by the trial court gave the tribe at most only temporary recognition, not permanent.  The court stated that this interim relief quite simply was not complete.

In addition, the plaintiffs here seek not only injunctive relief, but also a declaratory judgment that the Cherokee Nation's treaty territory is not a shared reservation or a former reservation of the UKB, and that the secretary's decision to take the land into trust violates treaties between the Cherokee Nation and the United States.  In that sense, the entry of a preliminary injunction prohibiting the Department of Interior from taking the gaming tract into trust for the benefit of the UKB does not afford the plaintiffs all the relief they could recover at the conclusion of a full trial on the merits.

In the alternative, should this circuit conclude that the preliminary injunction entered today alters the status quo or affords plaintiffs all the relief they could recover at the conclusion of a full trial, this court concludes that the plaintiffs have made a strong showing with regard to the likelihood of success on the merits and with regard to balancing of

1    the harms.

2         As to the bond, upon consideration of the

3    particular facts and circumstances of this case, the

4    court will not require plaintiffs to post a security.

5    First, plaintiffs Cherokee Nation and Cherokee Nation

6    Entertainment, LLC are entities with substantial

7    assets, and they will be able to pay any costs and

8    damages sustained by the UKB and/or the UKB

9    Corporation in the event the Department of Interior is

10   found to have been wrongfully enjoined or restrained.

11   In addition, the preliminary injunction here is

12   imposed upon the secretary and the acting assistant

13   secretary for Indian Affairs in their official

14   capacities, not upon the Band or the Band's

15   corporation.

16        In its agreement with the State of Oklahoma in

17   the separate action before the United States District

18   Court in the Eastern District of Oklahoma, the UKB

19   agreed it would be required to cease all gaming

20   activities unless the federal government accepted the

21   gaming tract in trust by a date certain.  The UKB thus

22   undertook the risk that the Department of the Interior

23   might not take the gaming tract into trust by the date

24   certain for any number of reasons, including the

25   possibility of arbitrary and capricious action.

1          As to the terms of the preliminary injunction,

2    pursuant to Title 5, United States Code Section 705

3    and Federal Rule of Civil Procedure 65, this court

4    hereby enjoins defendants Kenneth L. Salazar, in his

5    official capacity as Secretary of the Interior, and

6    Michael S. Black, in his official capacity as Acting

7    Assistant Secretary for Indian Affairs of the United

8    States Department of Interior, from transferring into

9    trust on behalf of the United Keetoowah Band

10   Corporation the 2.03-acre parcel that is the subject

11   of this action on the merits pending resolution on the

12   merits of this case.  The injunction is effective

13   immediately.

14          Anything further?

15             MR. MCMILLIN:  Yes, Your Honor.  We would

16   ask that you agree to stay your injunction and your

17   opinion pending appeal of this matter.

18             THE COURT:  Well, that's problematic

19   because if I were to stay it, technically the

20   secretary could put the land into trust in two days.

21          Your thoughts?

22             MR. MCMILLIN:  Well, my thoughts are, Your

23   Honor, that I'm obligated to ask you to stay your

24   hand.

25             THE COURT:  Well, I understand.  I think we

1    could craft this in such a way that the secretary

2    would not place the property into trust.

3        Mr. McCullough, any thoughts?  I mean, I do

4    think the UKB -- if the UKB and the secretary --

5    excuse me -- can persuade the Tenth Circuit to lift

6    the injunction, they ought to be afforded that right.

7                    MR. MCCULLOUGH:  I'm sorry, Your Honor.

8                    THE COURT:  Go ahead, sir.

9                    MR. MCCULLOUGH:  Well, there's certainly --

10                   THE COURT:  If you could approach -- both

11   of you could approach the microphone.

12                   MR. MCCULLOUGH:  There's certainly the

13   right -- as I'm sure we would all agree, there's the

14   right to appeal.  The problem here, Your Honor, is

15   what the court has said.  To stay, in essence, two

16   days from now, the 14th, would allow the department to

17   take the land into trust if there's no injunction

18   pending, then the Nation has been denied the relief

19   afforded under this injunction.

20       I believe that the -- even though the 14th is

21   when the secretary said they would take the land into

22   trust, I believe if you look at the agreed order the

23   judge has referenced in the Eastern District case,

24   they actually have until the 30th to seek relief from

25   the Tenth Circuit.  So they would have potentially a

1    couple weeks because they can continue gaming for that
2    period of time.
3              THE COURT:  If you all could figure this
4    out to keep the secretary from placing the land into
5    trust.  I certainly appreciate your position and was
6    thinking about how that could be done.  I haven't
7    figured out how that could be done.  But certainly the
8    secretary needs to be enjoined at this juncture from
9    placing the land into trust, which is really only
10   about 36 hours away.
11             MR. MCCULLOUGH:  That's correct.  That is
12   correct, Your Honor.  What they're asking is that
13   essentially stay the issue and we be denied the relief
14   granted us by the injunction.
15             THE COURT:  All right.  At this juncture,
16   without being given a way to get that accomplished
17   without lifting the injunction entirely, I'll
18   respectfully deny the request.  That's without
19   prejudice.  If you all -- and you all are considerably
20   smarter than I am -- you all can put your heads
21   together and see if there's a way to artfully put that
22   together.
23             MR. MCMILLIN:  Thank you, Your Honor.
24             THE COURT:  Yes, sir.  Anything further?
25             MR. HEMBREE:  Nothing further from the

1    Cherokee Nation.

2            MR. KEGLOVITS:   No, Your Honor.

3            MR. DODD:   Nothing further.

4            THE COURT:   Thank you very much.   We're

5    adjourned.

6            *(The proceedings were concluded)*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                        C E R T I F I C A T E

2

3

4            I, Brian P. Neil, a Certified Court Reporter

5    for the Northern District of Oklahoma, do hereby

6    certify that the foregoing is a true and accurate

7    transcription of my stenographic notes and is a true

8    record of the proceedings held in above-captioned

9    case.

10

11           I further certify that I am not employed by

12   or related to any party to this action by blood or

13   marriage and that I am in no way interested in the

14   outcome of this matter.

15

16           In witness whereof, I have hereunto set my

17   hand this 12th day of August 2013.

18
                        s/ Brian P. Neil
19           _____
                    Brian P. Neil, RMR-CRR
20                  United States Court Reporter

21

22

23

24

25