# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| THE CHEROKEE NATION, and ) <br> CHEROKEE NATION ENTERTAINMENT, ) <br> LLC, ) <br> ) <br>     Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> S.M.R. JEWELL, in her official capacity as ) <br> Secretary of the Interior, ) <br> U.S. Department of the Interior, and ) <br> KEVIN WASHBURN, in his official capacity as ) <br> Acting Assistant Secretary for Indian Affairs, ) <br> U.S. Department of the Interior, ) <br> ) <br>     Defendants, ) <br> ) <br> UNITED KEETOOWAH BAND OF ) <br> CHEROKEE INDIANS IN OKLHOMA ) <br> ) <br>     Intervenor Defendants. ) | Case No. 12-CV-493-GKF-TLW |

## OPINION AND ORDER

Before the court is the Motion to Supplement the Administrative Record and Objection to Redactions [Dkt. # 49] of the plaintiffs, The Cherokee Nation and Cherokee Nation Entertainment, LLC (collectively, "Cherokee Plaintiffs"). Cherokee Plaintiffs seek to supplement the administrative record lodged with this court [Dkt. ## 28-46] by the defendants, S.M.R. Jewell and Kevin Washburn, in their official capacities as representatives of the United States Department of the Interior (collectively, "Department of the Interior" or "DOI"). The Department of the Interior opposes the plaintiffs' motion. [Dkt. # 58]. Intervenor United Keetoowah Band of Cherokee Indians in Oklahoma ("the UKB") join the Department of the Interior in opposing plaintiffs' motion. [Dkt. # 55].

## I. Procedural Background

### A. District Court Procedural Background

Cherokee Plaintiffs brought the underlying action pursuant to 5 U.S.C. § 702 of the Administrative Procedures Act ("APA") by complaint. [Dkt. # 2]. They challenge the July 30, 2012 final determination of the Acting Assistant Secretary of Indian Affairs ("ASIA") to take a 2.03-acre parcel of land located in Tahlequah, Cherokee County, Oklahoma into trust for the benefit of the United Keetoowah Band of Cherokee Indians, a federally chartered corporation ("UKB Corporation"). 25 C.F.R. § 2.6(c) (2013) ("Decisions made by the [ASIA] shall be final for the Department and effective immediately unless the [ASIA] provides otherwise in the decision").

### B. Administrative Procedural Background

On April 12, 2006, the UKB submitted its first application to the Department of the Interior requesting that the 2.03-acre parcel be taken into trust for gaming purposes. [Administrative Record ("AR") 1650]. On August 15, 2011, the UKB and the UKB Corporation filed an amended application. [AR 3049]. On April 19, 2012, the Eastern Oklahoma Regional Office ("EORO") of the Bureau of Indian Affairs ("BIA") provided the ASIA with a memorandum recommending that the ASIA take the 2.03-acre parcel into trust. [AR 17]. Consistent with this recommendation, the ASIA issued the Department of the Interior's final decision on July 30, 2012 ("the 2012 Decision"), holding that the 2.03-acre parcel would be taken into trust for the UKB Corporation for gaming purposes. [AR 17]. Throughout the 2012 Decision, the ASIA refers to decisions from a previous, separate matter concerning whether the Department of the Interior would take a 76-acre land parcel in Cherokee County, Oklahoma into trust for the benefit of the Keetoowah for community purposes. [AR 17-26].

The previous, separate matter can be summarized as follows. On June 9, 2004, the UKB submitted an application to the Department of the Interior requesting that the 76-acre parcel be taken into trust. [AR 2176]. On April 7, 2006, the EORO BIA issued a decision ("the 2006 Decision") denying the UKB's request. [AR 3909-3914]. The UKB appealed the 2006 Decision to the Interior Board of Indian Appeals ("IBIA"). [AR 2176]. On May 2, 2008, the EORO BIA requested the IBIA remand the 2006 Decision to the EORO BIA for reconsideration, in light of a directive issued by the ASIA dated April 5, 2008 ("the 2008 Directive"). [AR 2176]. The IBIA vacated the 2006 Decision and remanded the matter to the EORO BIA for reconsideration. [AR 2176]. On August 6, 2008, the EORO BIA issued a second decision ("the 2008 Decision") again denying the UKB's application. [AR 2176]. The UKB appealed the 2008 Decision to the IBIA. [AR 2176].

On September 4, 2008, prior to any ruling from the IBIA, the ASIA informed the IBIA that the ASIA was taking jurisdiction over the appeal pursuant to 25 C.F.R. § 2.20(c). [AR 2176]. The ASIA then issued three decisions dated June 24, 2009 ("the June 2009 Decision"), July 30, 2009 ("the July 2009 Decision"), and September 10, 2010 ("the 2010 Decision"). [AR 2176, 2206-2218, 2219-2222, 2224-2228]. The June 2009 Decision remanded the case to the EORO BIA to apply the DOI's checklist for a categorical exclusion under the National Environmental Policy Act, which would exempt the UKB from a requirement that it perform an environmental assessment or submit an environmental statement. [AR 2206-2218]. The July 2009 Decision clarified aspects of the June 2009 Decision. [AR 2219-2222]. The 2010 Decision directed the EORO BIA to allow the UKB to amend its initial application in one of three alternative ways by which the 76-acre parcel might be placed in trust, and ordered the EORO BIA to reconsider the UKB's amended application, if submitted. [AR 2224-2228].

On October 5, 2010, the UKB amended its application by requesting that the 76-acre "Community Services Parcel" be taken into trust for the UKB Corporation. [AR 2176]. On January 21, 2011, the ASIA wrote the UKB to clarify the application. [AR 2176-2177]. On May 24, 2011, the EORO BIA Regional Director, consistent with the previous decisions from the ASIA, issued a decision determining that the 76-acre parcel would be taken into trust for the UKB Corporation ("the 2011 Decision"). [AR 2176-2186]. The Cherokee Nation appealed the EORO BIA Regional Director's decision to the IBIA and is awaiting an outcome. [Dkt. # 49, p. 2].

**II.   Discussion**

In the motion before the court, plaintiffs urge that the administrative record should be supplemented with three additional categories of documents: (1) documents listed in plaintiffs' Attachment Two that plaintiffs allege were presented to the IBIA in the appeal of the 2011 Decision [Dkt. # 49, p. 32-43]; (2) documents listed in plaintiffs' Attachment Three that plaintiffs allege the DOI "must have considered in rendering its 2012 Decision" [Dkt. # 49, p. 9]; and (3) all documents relied upon by the ASIA in rendering the 2011 and 2012 Decisions [Dkt. # 49, p. 11].  The plaintiffs expand this request considerably in their reply to defendants' response by requesting that the court also supplement the administrative record with "the full administrative record" pertaining to June 2009, July 2009, and September 2010 Decisions, as well as the January 21, 2011 letter [Dkt. # 65, p. 3-4].  In their reply plaintiffs argue the documents contained in Attachment Three should be added as extra-record evidence. [Dkt. # 65, p. 7-12]. Defendants in their response agree to supplement the administrative record with certain documents requested by plaintiffs, but oppose any further supplements to the administrative record. [Dkt. #58, p. 1-17].

- 4 -

A. **Applicable Legal Standard**

**1) Completing or Supplementing the Administrative Record**

The APA governs judicial review of a final agency action and requires a reviewing court to "hold unlawful and set aside agency action[s], findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A) (2013). In making such a determination, "the court shall review the whole record or those parts of it cited by a party . . . ." *Id.* "The complete administrative record consists of all documents and materials directly or indirectly considered by the agency." *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739 (10th Cir. 1993) (citations omitted). *Bar MK Ranches* notes that the "whole record" includes all records the agency considered when making its "initial decision," as well as all records considered upon internal review. *Id.*

The administrative record includes documents beyond those that "literally pass[ed] before the eyes of the final agency decisionmaker[s]." *Ctr. for Native Ecosystems v. Salazar,* 711 F. Supp. 2d 1267, 1275-76 (D. Colo. 2010) (quoting *Clairton Sportsmen's Club v. Pa. Turnpike Comm'n,* 882 F. Supp. 455, 465 (W.D. Pa. 1995); *Miami Nation of Indians of Ind. v. Babbitt*, 979 F. Supp. 771, 777 (N.D. Ind. 1996)). "If the agency decision maker based his decision on the work and recommendations of subordinates, those materials should be included in the record." *Ctr. for Native Ecosystems*, 711 F. Supp. 2d at 1275. The administrative record must include not only the documents and materials the agency ultimately credits when reaching its decision, but also those that the agency considered and rejected in reaching its final conclusion. *See Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989); *see also Wildearth Guardians v. U.S. Forest Serv.*, 713 F. Supp. 2d 1243, 1256 (D. Colo. 2010) (citing *Wilderness Soc'y v. Wisely*, 524 F. Supp. 2d 1285, 1295 (D. Colo. 2007) (holding that documents which were "considered" are "not simply those that the agency relied upon in reaching its decision")).

The "designation of the [a]dministrative [r]ecord, like any established agency procedure, is entitled to a presumption of administrative regularity[;] [t]he court assumes the agency properly designated the [a]dministrative [r]ecord absent clear evidence to the contrary." *Citizens for Alt. to Radioactive Dumping v. U.S. Dep't of Energy.*, 485 F.3d 1091, 1097 (10th Cir. 2007) (quoting *Bar MK Ranches*, 994 F.2d at 740). Thus, the burden to rebut the presumption of a complete record rests with plaintiffs. *Citizens to Pres. Overton Park v. Volpe*, 401 U.S. 402, 415, 91 S. Ct. 814, 823 (1971), overruled on other grounds, *Califano v. Sanders*, 430 U.S. 99, 105, 97 S. Ct. 980, 984 (1977). Plaintiffs must meet this burden by establishing with clear evidence that the administrative record fails to include documents or materials considered by defendants in reaching the challenged decision. *Citizens for Alt. to Radioactive Dumping,* 485 F.3d at 1097. Yet, this presumption is not to shield the agency from a "thorough, probing, [and] in-depth review." *Citizens to Pres. Overton Park,* 401 U.S. at 415.

Additionally, in very limited circumstances, plaintiffs may seek to supplement the administrative record with extra-record evidence, if sufficient justifications exist. *Am. Mineral Cong. v. Thomas*, 772 F.2d 617, 626 (10th Cir. 1985). Such legal justifications may include: (1) that the agency action is not adequately explained and cannot be reviewed properly without the cited materials; (2) that the agency ignored relevant factors it should have considered; (3) that the agency considered factors left out of the formal record; (4) that the case is so complex and the record so unclear that the reviewing court needs more evidence to enable it to understand the issues; and (5) that evidence came into existence after the agency acted that now demonstrates the agency's actions were right or wrong. *Id.* (citations omitted). However, courts must review such requests carefully, as the "focal point for judicial review should be the administrative record

already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142, 93 S. Ct. 1241, 1244 (1973).

### 2) Adequacy of Privilege Log and Asserted Attorney-Client Privilege

Rule 26 of the Federal Rules of Civil Procedure permits a party to withhold information from another party on the grounds of privilege, if the withholding party expressly asserts the privilege and, in doing so, describes the "nature of the documents, communications, or tangible things not produced or disclosed . . . ." Fed. R. Civ. P. 26(b)(5)(A). Production of a sufficiently detailed privilege log satisfies this requirement. *United Food v. Chesapeake Energy Corp.*, No. 09-1114, 2012 WL 2370637, at *8 (W.D. Okla. Jun. 22, 2012). However, a sufficiently detailed privilege log should identify each document for which defendants assert a privilege individually. *Id.* (noting the very detailed privilege log that identified each document); s*ee also In re Application of Michael Wilson & Partners*, No. 06-02575, 2009 WL 1193874, at *6 (D. Colo. Apr. 30, 2009) ("In the typical case, a Rule 26(b)(5) privilege log will individually list withheld documents and provide pertinent information for each document.").

The attorney-client privilege is well established. *See Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S. Ct. 667, 682 (1981). The privilege covers confidential communications from client to attorney and from attorney to client for the purpose of securing legal advice. *In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010). Defendants, who have invoked the privilege, bear the burden of proof in establishing that the privilege is applicable. *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550 (10th Cir. 1995).

### B. Analysis

With respect to the Cherokee Plaintiffs' request to complete the administrative record [Dkt. # 49, p. 2-11], the court grants plaintiffs' motion, in part, to the extent that plaintiffs have shown by clear evidence that the defendants considered the legal analysis and factual

conclusions reached in the Department of the Interior's 2006, 2008, June 2009, July 2009, 2010, and 2011 Decisions, regarding taking the 76-acre parcel into trust for the benefit of the Keetoowah for community purposes (collectively, "the 76-acre Decisions"). However, the court denies plaintiffs' motion, in part, to the extent that plaintiffs seek to expand the administrative record exponentially with "the full administrative record[s]" pertaining to the June 2009, July 2009, and September 2010 Decisions, as well as the January 21, 2011 Letter. [Dkt. # 65, p. 3-4]. Plaintiffs have not presented clear evidence demonstrating that the Department of the Interior considered the full records underlying the 76-acre Decisions in reaching the 2012 Decision.

As more fully discussed below, with respect to plaintiffs' request to supplement the administrative record [Dkt. # 49, p. 9, §§ B, C; # 65, p. 7-11], the court denies plaintiffs' motion, in part, to the extent that plaintiffs have not met their burden to show that an applicable exception exists to add three historical documents and a Federal Register notice to the administrative record. However, the court grants plaintiffs' motion, in part, and holds that plaintiffs have met their burden to show that an applicable exception exists to add two Department of the Interior policy sources. Lastly, the court grants plaintiffs' motion to include a letter from the Attorney General of the State of Oklahoma in the administrative record, as the court finds clear evidence that the Department of the Interior considered this letter in reaching its 2012 Decision.

### 1) Plaintiffs' Request to Complete the Administrative Record is Granted in Part and Denied in Part

Defendants, in reaching their 2012 Decision, relied upon the analysis and reasoning memorialized in the 76-acre Decisions. Such is evident from the very language of the 2012 Decision itself:

- By receiving and considering the comments of the Cherokee Nation on the instant acquisition, *as well as in the case of the recent acquisition of the community*

- 8 -

> *services parcel*, the Department has satisfied any requirements to consult with the Cherokee Nation. [AR 21 (emphasis added)].

- The Assistant Secretary's ***June 24, 2009 Decision***, remanded the application back to the Regional Director to apply the categorical exclusion checklist, ***as clarified by the July 30, 2009 Decision***, Motion to Reconsider and Withdraw Decision requesting additional briefing from UKB and CNO on the issue of the import, if any, of the *Carcieri v. Salazar* decision and concluded that alleged jurisdictional conflicts between the [UKB] and the Cherokee Nation would not prevent the Secretary from taking land into trust for the UKB Corporation to be governed by the [UKB] on the former Cherokee Reservation. *Id.* at 6-7, 11; *see also Assistant Secretary's September 10, 2010 Decision (reaffirming a decision that land could be taken into trust on the former Cherokee reservation for the UKB Corporation). This analysis supports the conclusion that the two tribes can avail themselves of the same former reservation for purposes of 25 U.S.C. § 2719(a)(2)(A)(i).* [AR 22 (emphasis added)].

- B. 25 C.F.R. 151.10(a) The existence of statutory authority for the acquisition and any limitations contained in such authority. ***The Assistant Secretary's September 10, 2010 decision which was clarified in a January 21, 2011 letter to the UKB, conclude that Section 3 of the OIWA, 25 U.S.C. § 503, implicitly authorizes the Secretary to take land into trust for the UKB Corporation.*** [AR 22 (emphasis added)].

Beyond mere reliance on the 76-acre Decisions, the Department of the Interior chose not to provide independent reasoning or analysis for some key portions of its 2012 Decision and instead opted to direct the reader to the 76-acre Decisions. Indeed, in the 2012 Decision the Department of the Interior's complete description of what statutory authority it relied upon in deciding to take the 2.03-acre parcel into trust for the benefit of the Keetoowah consists of a single sentence, which simply refers the reader to one of the 76-acre Decisions and a departmental letter. [AR 22]. Given the Department of the Interior's own reliance upon the reasoning of the 76-acre Decisions, those decisions, associated administrative actions, and one associated directive are necessary to complete the administrative record. The Department of the

Interior has already included the 2006 Decision [AR 3909],[1] June 2009 Decision [AR 2206], July 2009 Decision [AR 2219], 2010 Decision [AR 2224], and 2011 Decision [AR 2176] in the administrative record. However, the Department of the Interior declined to include the following decisions, actions, and/or directives: (1) the April 2008 Directive from the ASIA; (2) the May 2008 EORO BIA request for the IBIA to remand the 2006 Decision in light of the ASIA's April 2008 Directive; (3) the June 2008 IBIA order vacating the April 2006 Decision; (4) the EORO BIA's August Decision denying the UKB's 76-acre parcel application for a second time; (5) the September 2008 notification from the ASIA informing the IBIA and/or the parties that the ASIA would take jurisdiction over the appeal pursuant to 25 C.F.R. § 2.20(c); and (6) the September 2008 ASIA notice of assumption of jurisdiction.

The administrative record must be amended to include the above noted documents in order to complete the administrative record. A complete administrative record must include "all documents and materials directly or indirectly considered by the agency." *Bar MK Ranches*, 994 F.2d at 739. As the decisions relied upon by the Department of the Interior in reaching its present decision flowed directly from the 2006 Decision, the 2008 Decision, and the other above noted administrative actions and directive, the Department of the Interior directly and indirectly considered those decisions, actions, letter, and directive[2] in rendering the 2012 Decision now on appeal. It is not appropriate to exclude these documents from the administrative record simply because the Department of the Interior rejected some of the reasoning contained therein after consideration. *Thompson*, 885 F.2d at 555. As noted in *Bar MK Ranches*, the "whole record"

---

[1] Although the plaintiffs move to include this document in the administrative record, and defendants oppose such request, it appears to have been included by defendants in the administrative record. [AR 3909].

[2] Notably, the 2008 Directive was specifically incorporated by reference in the 2011 Decision of the EORO BIA, but not included in the administrative record. [AR 2177].

- 10 -

includes not only the agency's record of review, but also the records of the agency's "initial decision." 994 F.2d at 739.

Alternatively, the court holds that the six documents the Department of the Interior is hereby ordered to lodge with the court in completion of the administrative record would also be properly included as an extra-record supplement to the administrative record. Even if the Department of the Interior had not directly or indirectly considered such documents in rendering its 2012 Decision, the court would require access to such records in order to properly review that decision. *See Am. Mineral Cong.*, 772 F.2d at 626.

However, the court denies plaintiffs' request to the extent plaintiffs seek to expand the administrative record further. Plaintiffs seek to include the entire documentary record underpinning the 76-acre Decisions. [Dkt. # 49, p. 9; Dkt. # 65, p. 3-4]. Plaintiffs argue defendants "must have considered" such documents in "rendering [the] 2012 Decision" [Dkt. # 49, p. 9], such documents have "historical significance and are critical to the Nation's challenge" [Dkt. # 49, p. 8], and the court's failure to include such could jeopardize a "timely and meaningful review of the [u]nderlying [d]ecisions . . . as to both trust applications." [Dkt. # 65, p. 4]. Such reasoning does not meet plaintiffs' high burden to provide the court with clear evidence that the agency considered such records in rendering the decision presently on appeal. Plaintiffs have provided no evidence demonstrating that the Department of the Interior reviewed all the documents underpinning the 76-acre Decisions in reaching the 2012 Decision. To the contrary, record evidence demonstrates that the Department of the Interior relied upon the conclusions of the 76-acre Decisions, without reweighing the underlying records. As such, the entire documentary record underlying the 76-acre Decisions is not properly part of the administrative record in this case.

### 2) Plaintiffs' Request to Supplement the Administrative Record is Granted in Part and Denied in Part

Cherokee Plaintiffs request the court to supplement the administrative record with three types of documents: historical documents, internal policies and a Federal Register notice, and a letter from the Attorney General of the State of Oklahoma. [Dkt. # 65, p. 9-11]. Each type of document requires individualized discussion.

Plaintiffs request to supplement the record with three historical documents: (1) a 1948 letter from the Superintendent of the Five Civilized Tribes to the Acting Commissioner of Indian Affairs; (2) a transcript of a 1948 "convention of duly enrolled Cherokee Indians by blood in Oklahoma, which includes representatives of the Eastern or Immigrant Cherokees, the Western or Old Settler Cherokees, The United Keetoowah Band of Cherokees in Oklahoma, the so-called Seven Clans Cherokee Society, and the Texas Cherokees, all being a part of and representative of the whole Cherokee people or Tribe of Indians in Oklahoma," which allegedly reflects that the various Cherokee groups resolved to act "as one body, and not as groups or bands," in the selection of an attorney to represent them jointly in claims against the United States; and (3) a 1993 Memorandum from Tulsa Field Solicitor Sharon Blackwell to the Associate Solicitor of Indian Affairs, wherein Blackwell found that historically the Cherokee Nation has exercised governmental authority over the 14 county area within its treaty boundaries. [Dkt. # 65, p. 7-9]. Plaintiffs contend that, if the ASIA failed to consider these documents, he failed to consider all relevant factors in his discussion. Yet, at the same time, plaintiffs concede that "[o]ther historical documents" in the record will show that the UKB did not begin claiming governmental authority in the Cherokee Nation's treaty territory "until the 1990s." [Dkt. # 65, p. 8]. Plaintiffs do not adequately explain why the documents already contained in the record are insufficient for the purposes of this court's review. Nor have plaintiffs persuaded the court that these three

documents are so central to the issues before the court that the administrative record must now be amended to include them. Plaintiffs' motion as to these three historical documents is denied.

Plaintiffs also request to supplement the administrative record with two documents constituting internal policies and one Federal Register notice: (1) a September 2007 BIA Checklist for Gaming Acquisitions ("the 2007 Checklist"); (2) a July 2011 Fee to Trust Handbook, Version II; and (3) a January 16, 2001 Federal Register notice. [Dkt. # 65, p. 10-12]. Defendants concede that the first two documents are generally used by the Department of the Interior's management in making decisions on whether to take land into trust for gaming purposes, which is the subject of the current appeal. [Dkt. # 58, p. 16 ("These documents are internal Interior guidance issued to provide Interior management and staff with clear information on Interior policy . . . .")]. Defendants oppose the request to include the first two documents in the administrative record because they are otherwise available on the BIA's website. [Dkt. # 65, p. 16].

These documents are relevant to the court's review of the Department of the Interior's 2012 Decision. In all likelihood, based on defendants' representations, the Department of the Interior's management considered these sources in reaching its 2012 Decision. [Dkt. # 58, p. 16]. Such sources would have directed management's actions in this matter and therefore are necessary to the court's determination as to whether defendants acted arbitrarily or capriciously in making their 2012 Decision. As such sources were not explained or summarized in the 2012 Decision, the court requires access to the policies in place at the time of the Decision to fully evaluate the decision making process. *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1575 (10th Cir. 1994) (where the agency has provided an inadequate explanation or where limitations exist in the administrative record that make it impossible to conclude the action was

- 13 -

the product of reasoned decision making the reviewing court may supplement the administrative record). Moreover, even if these policies were not considered by the Department of the Interior's management, such policies may still bear on this court's analysis. In some limited circumstances courts have bound the Department of the Interior by the terms of its own policies, even when such requirements were more onerous than the applicable governing law at issue. *Mortin v. Ruiz*, 415 U.S. 199, 235, 94 S. Ct. 1055, 1074 (1947) (citing *Service v. Dulles*, 354 U.S. 363, 388, 77 S. Ct. 1152, 1165 (1957)). The court does not draw, at this juncture, any conclusions that such documents may render any advantage to plaintiffs in the present case, but notes this legal precedent in concluding that the Department of the Interior's internal policies are relevant and necessary to this court's review. While the defendants claim that these first two documents are on the BIA's website, the court notes that the defendants did not provide a direct link or citation to such documents in their response. [Dkt. # 58, p. 16-17]. Moreover, based on the court's review of the website provided by defendants (www.bia.gov), the court notes that the BIA's document library contains numerous documents and that these two documents are not easily located therein. Even if such documents were easily located on the BIA's website, BIA offers no information regarding the availability of such documents going forward or whether the policies have been amended since the 2012 Decision.

As the court deems these two policy documents necessary to the court's review of the 2012 Decision, and because such documents do not appear to be readily available in traditional legal research volumes or databases, the court grants plaintiffs' motion to include those documents in the administrative record. *See Am. Mineral Cong.*, 772 F.2d at 626. As the Federal Register notice is readily available in traditional legal research volumes and databases, the court denies plaintiffs' request to include such document in the administrative record.

Lastly, plaintiffs request to supplement the administrative record with a May 17, 2011 letter from the Attorney General of the State of Oklahoma. [Dkt. # 65, p. 9]. Defendants respond that they were "unable to identify the [document][,] . . . assert that [the document is] not relevant[,] and [was] not considered by the decision maker . . . ." [Dkt. # 58, p. 10]. Despite defendants' allegations that they do not recognize and did not consider this document, the decision maker discussed it in the 2012 Decision: "In a letter dated May 17, 2011, the Attorney General of the State of Oklahoma wrote to express his concerns about the amount of time taken to reach a determination on these matters. We have reviewed the [] comments . . . . This decision is reached after full consideration of these issues . . . ." [AR 23]. Given the plain language of the Department of the Interior's 2012 Decision, the court finds that the decision maker was aware of this letter and considered it. On such basis, the court orders the defendants to include this letter in completion of the administrative record. *Bar MK Ranches*, 994 F.2d at 739.

### 3)  The Government Shall More Fully Identify Redacted Documents

In its opening brief, Cherokee Plaintiffs objected to the redaction of certain documents in the absence of a privilege log and adequate documentation supporting a privilege. In response, the Federal Defendants provided a Revised Privilege Log. [Dkt. # 58, Exh. C]. In reply, plaintiffs object that the Revised Privilege Log does not sufficiently describe 21 fully redacted document pages identified in plaintiffs' reply at Attachment B in order to enable plaintiffs to determine whether a privilege assertion should be challenged.[3] The court agrees.

The defendants' Revised Privilege Log is organized by bates range entries, which specify a beginning and ending bates range for each entry. [Dkt. # 58, Exh. C]. The log sets out the date, agency, document type, author, recipient, description, privilege asserted, and category

---

[3] Plaintiffs' Attachment B identifies AR 2857, 2859-2860, 2886, 2992, 2994-2999, 2972-2973, 2989, 3647-3652, and 3922 as the documents at issue. [Dkt. # 65, Attachment B, p. 20].

(redacted or withheld) for each entry.  The 21 documents are located within three single entries containing large groupings of documents -- AR 1629 to 2990, AR 2991 to 3028, and AR 3646 to 3939.  In other words, defendants lump multiple pages (in one instance over 1300) into a single entry on the Revised Privilege Log.  They then list the privileges associated with that single entry without correlating the specific privilege(s) to any specific bates numbered document(s).  By doing so, defendants make it impossible for the plaintiffs or the court to discern which of the asserted privileges apply to which of the redacted or withheld documents located therein.  Fed. R. Civ. P. 26(b)(5); *see also United Food*, 2012 WL 2370637, at *8; *In re Application of Michael Wilson & Partners*, 2009 WL 1193874, at *6.  Plaintiffs' request for additional information as to the 21 pages listed in Attachment B to plaintiffs' reply is granted.

### 4) The July 30, 2012 Indian Lands Opinion

Plaintiffs seek the production, and addition into the administrative record, of a July 30, 2012 Indian Lands Opinion, which defendants have withheld on the grounds of attorney-client privilege.  [*See* AR 4090-4094; Dkt. # 65, Exh. C, p. 3].  Defendant shall provide the opinion to Magistrate Judge T. Lane Wilson for in camera review for the purpose of determining whether the document is properly withheld.  The Magistrate Judge may seek additional briefing if he believes it necessary.

### 5) Plaintiffs' Late Raised Speculative Request to Incorporate Alleged Documents into the Administrative Record is Denied

Plaintiffs raise a new argument for the first time in their reply.  Plaintiffs now request that the court order defendants to "add to the record all other documents related to the issue whether it abused its discretion in rendering the 2012 Decision, including certain documents related to UKB litigation against the United States. . . . *United Keetoowah Band of Cherokee Indians of Oklahoma v. United States*, U.S. Fed. Cl., Case No. 03-1433L." ("the Riverbed Litigation").

[Dkt. # 65, p. 13-15]. Cherokee Plaintiffs contend there is compelling evidence in the public record that the DOI has been influenced to take the tracts into trust for the UKB in return for the UKB's agreement to dismiss the Riverbed Litigation. Matters are not properly raised for the first time in a reply; such practice deprives the other party of their opportunity to respond. *See, e.g., Tyler*, 416 F.3d at 504 (6th Cir. 2005); *Campbell v. Province*, No. 08-536, 2012 WL 952628, at *4. Plaintiffs' request is improperly raised for the first time in their reply, untimely raised as a new issue, and it is at best speculative. As such, Plaintiffs request is denied.

## III.  Conclusion

WHEREFORE, the Motion to Supplement the Administrative Record and Objection to Redactions [Dkt. # 49] is granted in part and denied in part.

The court orders defendants to supplement the administrative record with the following documents:

(1) the April 2008 Directive from the ASIA;

(2) the May 2008 EORO BIA request for the IBIA to remand the 2006 Decision in light of the April 2008 Directive;

(3) the June 2008 IBIA order vacating the April 2006 Decision;

(4) the August 2008 Decision denying the UKB's application a second time;

(5) the September 2008 notification from the ASIA informing the IBIA that the ASIA would take jurisdiction over the appeal pursuant to 25 C.F.R. § 2.20(c);

(6) the September 2008 ASIA notice of assumption of jurisdiction;

(7) the BIA Checklist(s) for Gaming Acquisitions in existence during the processing of the UKB's application to take 2.03-acres of land into trust for gaming purposes;

(8) the July 13, 2011 BIA Fee to Trust Handbook, Version II;

(9) the May 17, 2011 letter from the Attorney General of the State of Oklahoma to Interior Secretary Ken Salazar and Tracie L. Stevens.

The court also orders defendants to amend their Revised Privilege Log with the 21 documents identified in plaintiffs' reply [Dkt. # 65, Attachment B, p. 20], insofar as defendants are ordered to identify each document individually in an amended privilege log.

Plaintiffs' motion is otherwise denied.

IT IS SO ORDERED this 20th day of September, 2013

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT