**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| THE CHEROKEE NATION, and | ) | |
| CHEROKEE NATION ENTERTAINMENT, | ) | |
| LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 12-cv-493-GKF-JFJ |
| | ) | |
| DAVID BERNHARDT, in his official | ) | |
| capacity as Secretary of the Interior, | ) | |
| U.S. Department of the Interior; and | ) | |
| TARA KATUK MAC LEAN SWEENEY, | ) | |
| in her official capacity as | ) | |
| Assistant Secretary – Indian Affairs, | ) | |
| U.S. Department of the Interior, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| UNITED KEETOOWAH BAND OF | ) | |
| CHEROKEE INDIANS IN OKLAHOMA | ) | |
| CORPORATION, and UNITED | ) | |
| KEETOOWAH BAND OF CHEROKEE | ) | |
| INDIANS IN OKLAHOMA, | ) | |
| | ) | |
| Intervenor Defendants. | ) | |

## OPINION AND ORDER

Plaintiffs The Cherokee Nation (Nation) and Cherokee Nation Entertainment, LLC (CNE)

challenge the July 30, 2012 decision (the 2012 Decision) of the Assistant Secretary – Indian Affairs

(Assistant Secretary) of the U.S. Department of the Interior to take a 2.03-acre parcel[1] into trust

---

[1] The parcel is located in the City of Tahlequah in Cherokee County, Oklahoma.

for gaming purposes for the use and benefit of the United Keetoowah Band of Cherokee Indians in Oklahoma Corporation (UKB Corporation).

The court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1331, because the action arises under laws and treaties of the United States. Although the 2.03-acre parcel lies within the Eastern District of Oklahoma, venue is proper in this district, which contains much of the Nation's reservation. *See Navajo Nation v. Urban Outfitters, Inc.*, 918 F. Supp. 2d 1245, 1254-56 (D.N.M. 2013) (giving substantial deference to a tribe's chosen forum where the tribe's reservation lands spanned multiple states). Plaintiffs assert venue pursuant to 28 U.S.C. § 1391(e)(1), and defendants have raised no objection.

Agency action shall be set aside if the action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 414 (1971). An action is arbitrary and capricious if

> the agency (1) entirely failed to consider an important aspect of the problem, (2) offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise, (3) failed to base its decision on consideration of the relevant factors, or (4) made a clear error of judgment.

*Hillsdale Envtl. Loss Prevention, Inc. v. U.S. Army Corps of Eng'rs*, 702 F.3d 1156, 1165 (10th Cir. 2012) (quoting *New Mexico ex rel. Richardson v. Bureau of Land Management*, 565 F.3d 683, 697 (10th Cir. 2009)). The court will "uphold the agency's action if it has articulated a rational basis for the decision and has considered relevant factors." *Wolfe v. Barnhart*, 446 F.3d 1096, 1100 (10th Cir. 2006).

## I. Background

In 1934, Congress passed the Indian Reorganization Act (IRA), which, among other things, allowed tribes to incorporate so they could conduct business more easily. The IRA specifically

excluded tribes in Oklahoma, but, in 1936, the Oklahoma Indian Welfare Act (OIWA) extended to tribes organized under the OIWA "any other rights or privileges secured to an organized Indian tribe under the [IRA]."  25 U.S.C. § 5203.

In 1946, Congress formally recognized the Keetoowah Indians of the Cherokee Nation of Oklahoma "as a band of Indians residing in Oklahoma within the meaning of section 3 of the [OIWA]."  *See* Pub. L. No. 79-715, 60 Stat. 976 (1946).  In 1950, the Secretary of the Interior approved the constitution and bylaws of the United Keetoowah Band of Cherokee Indians in Oklahoma (UKB) and issued a corporate charter to the UKB Corporation.  The corporate charter authorized the UKB Corporation to hold, manage, operate, and dispose of real property.

In 1985, the UKB asked the Secretary of the Interior to take 5.755 acres into trust.  The then-Assistant Secretary denied this request on the grounds that the UKB was not authorized to exercise concurrent jurisdiction "over Cherokee lands within the former Cherokee Reservation," and because the Nation's consent was required under 25 C.F.R. § 151.8.  AR001220.

In 1986, the UKB purchased the 2.03-acre parcel and began to offer public bingo there.  AR005082-83.  In 1988, the Indian Gaming Regulatory Act (IGRA), 25 U.S.C. § 2701, *et seq.*, was enacted.  Among other things, IGRA provides that gaming shall not be conducted on lands acquired by the Secretary of the Interior in trust for the benefit of an Indian tribe after October 17, 1988 unless the Indian tribe has no reservation on October 17, 1988 and such lands are located in Oklahoma and "are within the boundaries of the Indian tribe's former reservation, as defined by the Secretary."  25 U.S.C. § 2719(a)(2)(A)(i).

The IGRA also established the National Indian Gaming Commission (NIGC), which became operational in 1991 when the three-member commission was fully seated.  AR005083.  In August of 1991, the NIGC promulgated a regulation requiring all Class II gaming operations

within its jurisdiction to begin self-reporting and paying fees. In December of 1991, the UKB remitted an annual fee payment to the NIGC, and the NIGC began to regulate the UKB's gaming operation, though the NIGC did not determine whether the gaming operation was on "Indian lands" and within the NIGC's jurisdiction. AR005083-84.

In 1992, Congress included the following language in the "Department of the Interior and Related Agencies Appropriations Act of 1992" (1992 Appropriations Act): "[U]ntil such time as legislation is enacted to the contrary, . . . [no] funds [shall] be used to take land into trust within the boundaries of the original Cherokee territory in Oklahoma without the *consent* of the Cherokee Nation." Pub. L. No. 102-154, 105 Stat. 990 (1991) (emphasis added). But seven years later, in the "Omnibus Consolidated and Emergency Supplemental Appropriations Act of 1999" (1999 Appropriations Act), Congress explicitly amended that language as follows:

> [T]he sixth proviso under [the 1992 Appropriations Act] is hereby amended to read as follows: "*Provided further*, That until such time as legislation is enacted to the contrary, no funds shall be used to take land into trust within the boundaries of the original Cherokee territory in Oklahoma without *consultation* with the Cherokee Nation[.]"

Pub. L. 105-277, 112 Stat. 2681-246 (1998) (second italics added).

In 1995, the NIGC approved the UKB's tribal gaming ordinance, but wrote in its approval letter that "[i]t is important to note that the gaming ordinance is approved for gaming only on Indian lands as defined in the IGRA. At the current time, it is the understanding of the NIGC that the [UKB] does not have any lands that meet that definition." AR005084. Following NIGC's letter, the UKB continued to conduct gaming activities, and the NIGC continued to accept the UKB's fee payments and to perform regulatory tasks. AR005084-85.

In September of 2000, the NIGC formally concluded that the 2.03-acre parcel on which the UKB was conducting gaming was not "Indian lands" over which the UKB had jurisdiction, and

therefore the UKB's gaming activity was not subject to IGRA. AR004074-79. Similarly, the Eastern Oklahoma Regional Office of the BIA (Region) maintained the position that the UKB lacked a jurisdictional land base over which it could exercise territorial jurisdiction. AR001285; AR001287-90; AR001298-1300.

In 2004, the State of Oklahoma sought to close the UKB casino. In response, the UKB filed suit in the United States District Court for the Eastern District of Oklahoma seeking APA review of the NIGC's decision. *United Keetoowah Band of Cherokee Indians in Oklahoma v. Oklahoma et al.*, 04-CV-340 (E.D. Okla. 2004). AR001308-16 (UKB's Fourth Amended Complaint). In 2006, the district court remanded the matter to the NIGC for "further consideration of all relevant factors," and permitted gaming to continue in order to maintain the status quo. *UKB v. Oklahoma*, 2006 U.S. Dist. LEXIS 97268, at *26 (E.D. Okla. Jan. 26, 2006).

In April 2006, the Region denied a trust acquisition request by the UKB for a 76-acre parcel. After a number of twists and turns, the UKB amended its application to take the 76 acres into trust for the UKB Corporation rather than the UKB tribe, and pursuant to 25 U.S.C. § 5203, rather than section 5 of the IRA, 25 U.S.C. § 5108. On May 21, 2011, the Region granted the UKB's amended application. The Nation sued the BIA in federal district court challenging the decision and, in 2017, the U.S. District Court for the Eastern District of Oklahoma found in favor of the Nation, determining that the BIA's decision to take the 76 acres into trust was arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with law. Accordingly, the district court enjoined the Secretary of the Interior from accepting the 76 acres into trust. *See Cherokee Nation v. Jewell*, No. CIV-14-428-RAW, 2017 WL 2352011 (E.D. Okla. May 31, 2017).

On or about April 12, 2006, the UKB filed an application with the Region to have the 2.03-acre parcel involved in this case taken into trust. AR001559; AR001653-61; AR001444-558.

Upon receipt of the application, the BIA sought comments from the Nation, and the Nation objected. *See* AR001195-1346.

On July 18, 2011, the NIGC decided the matter that had been remanded by the Eastern District of Oklahoma in *UKB v. Oklahoma*. The NIGC concluded the 2.03-acre parcel did not qualify as Indian lands under IGRA, and that therefore the NIGC did not have jurisdiction to regulate the gaming activities taking place there. AR005077-94. However, the NIGC recognized its analysis would have to be reevaluated if the Department of the Interior were to accept the parcel into trust. AR005094.

On August 15, 2011, the UKB amended its 2006 Trust Application to take the 2.03-acre parcel into trust. AR000799-885; AR000794. The amended application requested the Secretary take the parcel into trust either for the UKB as requested in the 2006 Trust Application, or, in the alternative, for the UKB Corporation. AR000800.

On April 19, 2012, the Region recommended to the BIA's Director that the 2.03-acre parcel be taken into trust for the UKB Corporation, subject to a determination by the Office of Indian Gaming (OIG) that the property may be acquired in trust for gaming purposes. AR005095-5105. The Region made no finding "as to whether the former reservation of the Cherokee Nation is also the former reservation of the UKB for purposes of the [IGRA,]" leaving that question to OIG. *Id.* at AR005095.

On June 11, 2012, the State of Oklahoma and the UKB entered into a settlement agreement in which the parties agreed to an order lifting the injunction permitting gaming on the 2.03-acre parcel effective July 30, 2012, until such time as federal authorities accepted the parcel into trust. AR004680-84. That same day, Oklahoma's Senior Assistant Attorney General wrote the OIG asking that a decision be made as quickly as possible on the UKB's amended trust application.

AR001593. On the morning of July 24, 2012, six days before the deadline, the Solicitor's office at Interior finalized a briefing paper for the Assistant Secretary. AR004377-80. The briefing paper noted "[t]his decision is the first time the Department has recognized two tribes as having the same former reservation for purposes of qualifying for the exception in IGRA for acquiring land in trust after 1988." On July 30, 2012, the Assistant Secretary issued his decision to take the 2.03-acre parcel into trust ("the 2012 Decision"). *See* AR000017-26.

Gaming continued on the 2.03-acre parcel until July 2013, when, on the joint motion of the UKB and the State of Oklahoma, the U.S. District Court for the Eastern District of Oklahoma modified its order of January 26, 2006, and required the UKB to cease all gaming operations "until such time, if ever, that the Land is actually taken into trust by the United States, at which time the Keetoowah Cherokee may resume gaming operations at the Gaming Facility for as long as the Land actually remains in trust and the NIGC permits gaming on the Land." *See UKB v. Oklahoma*, Doc. 152, 153.

Following a hearing held August 12, 2013, this court granted the plaintiffs' motion for preliminary injunction and enjoined the Secretary of the Interior from transferring the 2.03-acre parcel into trust pending resolution on the merits of this case. Doc. 92, p. 30.

In September, 2019, the Tenth Circuit Court of Appeals reversed the injunction preventing the Secretary of Interior from taking the 76-acre parcel into trust. *Cherokee Nation v. Bernhardt,* 936 F.3d 1142 (10th Cir. 2019), *petition for cert. filed,* Jan. 23, 2020 (No. 19-937). The circuit panel held that:

> (1) the BIA need not consider the definition of "Indian" under the IRA when taking land into trust pursuant to the OIWA. Put another way, the court concluded that "section 3 of OIWA was not meant to be constrained by the definition of 'Indian' in the IRA"

and, "[b]ecause it is undisputed that the UKB is a 'recognized tribe or band of Indians residing in Oklahoma' . . . that has incorporated pursuant to OIWA . . . the BIA properly concluded that statutory authority exists for the Secretary to take the [76-acre parcel] into trust for the UKB Corporation." *Id.* at 1155;

(2) the Nation's consent is not required for the BIA to take the 76-acre parcel into trust. *Id.* at 1155-59; and

(3) the BIA's consideration of two regulatory factors for land-into-trust acquisitions – "jurisdictional problems and potential conflicts of land use which may arise," and whether the BIA is "equipped to discharge the additional responsibilities resulting from the acquisition of the land in trust status" – was not arbitrary and capricious. *Id.* at 1159-62.

The Tenth Circuit has issued a mandate in *Bernhardt*, and its holdings are binding authority in this circuit.

## II. <u>Analysis</u>

Plaintiffs contend the 2012 Decision must be set aside for five reasons:

A.      Because the 2012 Decision that the Nation's "former reservation" is shared by the UKB for purposes of compliance with IGRA and trust acquisition requirements is contrary to law, arbitrary, and capricious;

B.      Because the 2012 Decision's approval of the UKB trust application without the Nation's consent is arbitrary and capricious and contrary to law;

C.      Because the 2012 Decision concerning jurisdictional conflicts is arbitrary and capricious and contrary to law;

D.     Because the 2012 Decision failed to properly consider whether the BIA is sufficiently equipped to discharge the additional responsibilities that would result from the trust acquisition and is arbitrary and capricious; and

E.     Because the 2012 Decision that the Department of the Interior (Department) possesses statutory authority to place the 2.03-acre parcel into trust on behalf of the UKB Corporation is contrary to law and the Assistant Secretary's own policies and regulations

## A.  The Department's Statutory Authority

Plaintiffs challenge the Department's statutory authority to place the parcel into trust on three grounds.

First, plaintiffs argue that the Assistant Secretary's reliance on section 3 of the OIWA as authority to acquire the land in trust was an improper attempt to circumvent the Supreme Court's decision in *Carcieri v. Salazar*, 555 U.S. 379 (2009).  The Tenth Circuit resolved this question in *Bernhardt*:

> As the Supreme Court noted in *Carcieri*, Congress may choose "to expand the Secretary's authority to particular Indian tribes not necessarily encompassed within the definitions of 'Indian' set forth in § [5129]."  That is precisely what Congress did when it enacted OIWA.  By its terms, OIWA extends to properly incorporated Oklahoma Indian groups "the right … to enjoy any other rights or privileges secured to an organized Indian tribe under the [IRA].  ...
>
> Accordingly, it was not necessary for the BIA to consider whether the UKB Corporation met the IRA's definition of "Indian," and the *Carcieri* ruling was not implicated. ... Because it is undisputed that the UKB is a "recognized tribe or band of Indians residing in Oklahoma," that has incorporated pursuant to OIWA, the BIA properly concluded that statutory authority exists for the Secretary to take the Subject Parcel into trust for the UKB Corporation.

936 F.3d at 1154-55 (internal citations omitted).  The Assistant Secretary therefore properly relied on section 3 of the OIWA as authority to take the property into trust for the benefit of the UKB.

Second, plaintiffs contend that section 3 of the OIWA and land acquisition regulations do not permit tribal corporations to acquire land in trust, except under limited circumstances not applicable in this case.[2]  In *Bernhardt*, Judge Eid wrote:

> [T]he BIA found that "Section 3 of the OIWA … implicitly authorizes the Secretary to take land into trust for the UKB Corporation."  The BIA found this implicit authority in the following language of OIWA: "Such charter [of incorporation] may convey to the incorporated group, in addition to any powers which may properly be vested in a body corporate under the laws of the State of Oklahoma, the right … *to enjoy any other rights or privileges secured to an organized Indian tribe under the [IRA]*." 25 U.S.C. § 5203 (emphasis added).  Because section 5 of the IRA authorizes the Secretary of the Interior to take land into trust "for the purpose of providing land for Indians," 25 U.S.C. § 5108, OIWA's reference to the IRA implicitly grants the Secretary authority to take land into trust for incorporated Oklahoma tribal groups (like the UKB).

936 F.3d at 1149 (emphasis in original).  The appellate court's reasoning demonstrates that the Assistant Secretary reasonably concluded that the OIWA provides statutory authority for the Department to take the 2.03-acre parcel into trust for the UKB Corporation.

Third, plaintiffs argue the Assistant Secretary did not follow the Department's own regulations and policies in approving the trust application.  Here, the UKB submitted an amended application on behalf of both itself and the UKB Corporation.  The amended application requested that the Secretary accept the parcel into trust "either for the Tribe … or, in the alternative, for the Tribe's federally-chartered corporation."  AR003049.  Plaintiffs contend that, pursuant to 25 C.F.R. § 151.9 and the Department's fee-to-trust handbook, the Assistant Secretary abused his

---

[2] On this point, the 2012 Decision adopts by reference the analysis in the Assistant Secretary's September 10, 2010 decision and January 21, 2011 clarifying letter regarding the 76-acre community services parcel.  *See* AR000022; AR003254-55.

discretion by permitting the UKB to submit the amended application rather than requiring the UKB Corporation to submit the application for its own benefit. Section 151.9 provides:

> An individual Indian or tribe desiring to acquire land in trust status shall file a written request for approval of such acquisition with the Secretary. The request need not be in any special form but shall set out the identity of the parties, a description of the land to be acquired, and other information which would show that the acquisition comes within the terms of this part.

Plaintiffs argue that the applicant in a fee-to-trust application must be the same legal entity as the proposed trust beneficiary. Citing the 2010 Decision regarding the 76-acre parcel, they point to the Assistant Secretary's recognition that the tribal government and the tribal corporation are separate entities. AR003588 n.1. But plaintiffs omit the remainder of that passage, wherein the Assistant Secretary noted, "[t]he UKB Corporation is merely the tribe organized as a corporation. Its property, therefore, is tribal property. Tribal property is subject to the governing authority of the UKB Government. Thus, any land placed into trust for the UKB Corporation would necessarily be under the governmental jurisdiction of the UKB Government." *Id.* Moreover, in the Resolution submitted in support of the fee-to-trust application and which affirmed that the 2.03-acre parcel will be held in trust for the UKB Corporation, the UKB notes that Article V, Section 1 of the UKB Constitution provides that the supreme governing body of the Band shall be the Council of the UKB, and that "Sections 3(a) through 3(v) of the UKB Corporate Charter … provides that the UKB Council is charged with conducting business and finance and preserving the property … of the Band." AR000223. Based on the above and foregoing considerations, this court finds and concludes the Assistant Secretary did not abuse his discretion under 25 C.F.R. § 151.9 by considering the application submitted on behalf of either the UKB or the UKB Corporation. In addition, the Assistant Secretary's interpretation is not plainly erroneous or inconsistent with § 151.9. *Auer v. Robbins*, 519 U.S. 452, 461 (1997).

Plaintiffs also point to language in the Department's Fee-to-Trust Handbook they say the Department did not follow:

All fee-to-trust applications must contain the following . . .:

    1.    Written request.

    A written request need not be in any special form but must contain each of the following items.

    a.    A statement that the *applicant* is requesting approval of a trust acquisition by the United States of America *for their benefit*.

    b.    Identification of applicant(s) . . . .

    f.    A legal instrument (such as a deed), *to verify applicant ownership*.

    2.    In addition to the requirements of Step 1, above, the *Tribal* applicant will also submit the following: …

    b.    Statutory Authority.

AR004986-87 (emphasis added by plaintiffs). But the Department's Fee-to-Trust Handbook is merely an internal document issued to all BIA Regional Directors to guide BIA personnel in preparing acquisition packages for review by the Office of Indian Gaming Management Staff. AR004979-AR005076. The Handbook is not published in the Federal Register or the Code of Federal Regulations. It is not binding on the Department; it is guidance material that lacks the force of law. *See Mich. Gambling Opposition v. Kempthorne*, 525 F.3d 23, 28-29 (D.C. Cir. 2008) (2005 Checklist for Gaming Acquisitions was not binding on the Department). Furthermore, the court has ruled on the substance of the plaintiffs' objections that correspond with this procedural argument – that the UKB properly submitted the amended application on behalf of itself and the UKB Corporation, and that the OIWA provided statutory authority for the Department to take the parcel for the benefit of the UKB Corporation. This court therefore concludes that the Assistant

Secretary did not abuse his discretion in processing the fee-to-trust application in a manner that plaintiffs contend was not in conformity with the Department's fee-to-trust handbook.

## B. Consent

Plaintiffs contend the Assistant Secretary's approval of the UKB's trust application without the Nation's consent was arbitrary and capricious and contrary to law. They first argue that the 2012 Decision violates 25 C.F.R. § 151.8, which provides that an Indian tribe "may acquire land in trust status on a reservation other than its own only when the governing body of the tribe having jurisdiction over such reservation consents in writing to the acquisition." But the Tenth Circuit rejected that argument when it concluded that the 1999 Appropriations Act overrides the consent requirement of section 151.8 with respect to lands within the original Cherokee territory in Oklahoma. *Bernhardt*, 936 F.3d at 1156-57.[3]

Plaintiffs also argue that the 2012 Decision violates articles 8, 15, and 26 of the Treaty between the United States of America and the Cherokee Nation of Indians, July 19, 1866, 14 Stat. 799 (1866 Treaty). The Tenth Circuit held otherwise in *Bernhardt*, stating "[w]e do not read the Treaty's terms as prohibiting the UKB's application without Nation consent." 936 F.3d at 1157. Focusing on the language in article 26 of the 1866 Treaty, the panel ruled that "article 26 of the 1866 Treaty does not support the Nation's claim that it may veto the UKB's land-into-trust application." *Id*. at 1158.

---

[3] The Assistant Secretary did not explicitly reference the 1999 Appropriations Act in his 2012 Decision, but relied on its overriding text when he stated that DOI "has satisfied any requirements to consult with the Cherokee Nation" by receiving and considering its comments on the UKB's application. AR000021.

Article 8 of the 1866 Treaty provides that "[n]o license to trade in goods, wares, or merchandise shall be granted by the United States to trade in the Cherokee Nation, unless approved by the Cherokee national council." Plaintiffs argue that Article 8 prohibits a commercial gaming enterprise on the 2.03-acre parcel without the Nation's consent. Gaming, however, cannot reasonably be construed as "trade in goods, wares, or merchandise," and the UKB are not seeking a license from the United States to trade in goods.

Article 15 permits the United States to settle "any civilized Indians, friendly with the Cherokees and adjacent tribes, within the Cherokee country . . . on such terms as may be agreed upon by any such tribe and the Cherokees." But plaintiffs' argument that the 2012 Decision violates Article 15 fails, as the acquisition of a 2.03-acre parcel cannot possibly be construed as an attempt by the United States to "settle" another tribe, particularly when the Keetoowah Cherokees were settled on the lands at the time of the 1866 Treaty, and had been settled there since the early 1800s.

For the foregoing reasons, the Assistant Secretary's approval of the UKB's trust application without the Nation's consent was not arbitrary and capricious or contrary to law.

## C. Jurisdictional Problems and Potential Conflicts of Land Use

Plaintiffs argue the Assistant Secretary failed to give sufficient weight to 25 C.F.R. § 151.10(f), which requires the agency to consider jurisdictional conflicts which may arise if the land is placed in trust status when the land is located within an Indian reservation.[4] Specifically, they point to taxing, gaming regulation, and law enforcement services as areas in which they

---

[4] Because the Assistant Secretary determined that the acquisition is within the former reservation of the UKB, he therefore considered the factors contained in § 151.10, "On-reservation Acquisitions," to be applicable. AR000021.

contend conflicts are certain to occur. But the Assistant Secretary found that jurisdictional problems were not insurmountable. He referenced and relied on the June 2009 Decision to place the 76-acre parcel into trust, in which the Assistant Secretary stated that 25 U.S.C. § 476(f),[5] an amendment to the IRA enacted in 1994, mandates that the government shall not "classif[y], enhance[], or diminish[] the privileges and immunities available to [an] Indian tribe relative to other federally recognized tribes[.]" AR000024; AR003636. Quoting the June 2009 Decision, the Assistant Secretary stated "this section of the IRA 'prohibits the Department from finding that the UKB lacks territorial jurisdiction while other tribes have territorial jurisdiction.'" AR00024. In the June 2009 Decision, the Assistant Secretary reasoned that this provision "justified a departure from BIA precedent holding that the Nation exercised exclusive jurisdiction within the former Cherokee reservation." *Bernhardt*, 936 F.3d at 1160; *see also* AR003636. In addition, the Assistant Secretary concluded that jurisdictional conflicts could be minimized by the UKB exercising exclusive jurisdiction over land that the United States holds in trust for the UKB. AR003637. Upon consideration of the briefing and arguments of counsel, the court concludes that the Assistant Secretary gave sufficient weight to 25 C.F.R. § 151.10(f), and "was justified in relying on the 1994 IRA Amendment . . . as [a basis] for changing the BIA's stance on the exclusivity of Nation jurisdiction over former Cherokee reservation land." *Id.* at 1161.

The Assistant Secretary also considered a potential jurisdictional issue the Region had identified on a survey of the parcel. A portion of the casino building encroaches onto a separate tract of property owned in fee by the UKB, raising the potential that a portion of the casino building

---

[5] Now located at 25 U.S.C. § 5123(f). The 2012 Decision refers to § 476(g), a typographical error.

would be subject to state jurisdiction. To address the concern, the UKB provided the BIA Tribal Resolution No. 12-UKB-33, which stated that the UKB intends to make application to place the parking lot tract in trust and that, in the meantime, the UKB would not conduct gaming activities on the portion of the property that lies outside of the 2.03-acre parcel. AR000024.

Section 151.10 "does not provide guidance on how the Secretary is to 'weigh' or 'balance' the factors." *McAlpine v. United States*, 112 F.3d 1429, 1434 (10th Cir. 1997). This Court finds the Assistant Secretary's consideration of jurisdictional problems and potential conflicts of land use in evaluating the UKB's request for the acquisition of the 2.03-acre parcel in trust was not arbitrary and capricious or contrary to law.

### D. The BIA's Additional Responsibilities

Plaintiffs argue the Assistant Secretary abused his discretion in failing to consider "whether the [BIA] is equipped to discharge the additional responsibilities resulting from the acquisition of the land in trust status," as required by 25 C.F.R. § 151.10(g). In his 2012 Decision, the Assistant Secretary noted that, as a result of the BIA's Self-Governance Compact with the Nation, the BIA agency with jurisdiction over BIA programs within the treaty boundaries of the former Nation had been closed and the funds used for direct services to the Nation and all Indians within that area (regardless of tribal affiliation) had been transferred to the Nation. He further noted that, although the Nation has numerous full-time employees available to provide BIA services, the UKB would likely reject the authority of the Nation's employees and insist that the Region provide BIA direct services, and the additional duties might increase the workload on the Region unless additional appropriations or budget allocations were obtained. Despite these factors, the Region had "concluded that they are capable of providing services for UKB and we concur." AR000025. The administrative record reflects that the Region agreed with that assessment. *See* Memorandum from

the Region to Director, Bureau of Indian Affairs (April 19, 2012) at AR005103 ("[T]he Region is, nevertheless, capable of providing these services.").

Plaintiffs also argue the Assistant Secretary did not identify where the BIA would obtain additional funds. But the Assistant Secretary's conclusion that the Region was capable of providing direct services to the UKB was not contingent on the BIA obtaining additional resources. As described in the analysis of jurisdictional conflicts above, § 151.10 provides that the agency will *consider* certain criteria in evaluating requests for the acquisition of land in trust status. Subsection (g) specifically requires the Assistant Secretary to consider whether the BIA was equipped to discharge the additional responsibilities resulting from the acquisition of the small parcel, and he did so. The small size of the 2.03-acre parcel and the Assistant Secretary's observation that BIA direct services had been provided in the past "suggest that any additional administrative burden will not be unreasonable." *Bernhardt*, 936 F.3d at 1162.

The Assistant Secretary properly considered the criterion set forth in § 151.10(g) and did not make a clear error of judgment. *Citizens to Preserve Overton Park*, 401 U.S. at 416. This court therefore concludes the Assistant Secretary's consideration of whether the BIA is equipped to discharge the additional responsibilities resulting from the acquisition of the proposed 2.03-acre parcel was not arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law. *See Bernhardt*, 936 F.3d at 1161-62.

### E. The "Former Reservation" Decision

The Assistant Secretary concluded in his 2012 Decision that the 2.03-acre parcel may be taken into trust for gaming pursuant to 25 U.S.C. § 2719(a)(2)(A)(i) and the implementing regulations set forth in 25 C.F.R. Part 292. AR000021-25. In reaching his conclusion he reasoned as follows:

The IGRA prohibits gaming on Indian lands accepted by the Secretary into trust for the benefit of an Indian tribe after October 17, 1988, unless the lands fall within certain statutory exceptions. See 25 U.S.C. § 2719. One such exception arises if the Indian tribe has no reservation and the lands are in Oklahoma and within the boundaries of the Indian tribe's former reservation,[6] as defined by the Secretary. 25 U.S.C. § 2719(a)(2)(A)(i).

. . . There is no question that the UKB occupied the former Cherokee reservation nor that the Keetoowah Society of Oklahoma Cherokees was formed out of the Cherokee Nation of Oklahoma. . . .

The Department's regulations define "former reservation" to mean: "lands in Oklahoma that are within the exterior boundaries of the last reservation that was established by treaty, Executive Order, or Secretarial Order for an Oklahoma tribe." 25 C.F.R. § 292.2. Neither the text of IGRA, nor the Department's regulations implementing the exceptions to the general prohibition of gaming on lands acquired in trust after October 1988, 25 U.S.C. § 2719, address the question of whether two federally recognized tribes, one of which was formed under express congressional authorization from the citizens of the other, can share the same former reservation for purposes of qualifying for the "former reservation" exception in 25 U.S.C. § 2719(a)(2)(A)(i). The express language of the statute makes it clear, however, that the determination of whether the land is within the boundaries of a tribe's former reservation is a determination for the Secretary to make. *Id.*

In view of the origins of the Band as composed of Cherokee Indians, reorganized and separately recognized under express authorization from Congress and a constitution approved by the Assistant Secretary of the Interior expressly establishing its tribal headquarters in Tahlequah, Oklahoma, within the historic reservation boundaries, I believe the former reservation of the Cherokee Nation is also the former reservation of the UKB for the purposes of applying the exception under 25 U.S.C. § 2719(a)(2)(A)(i).

---

[6] The statutory reference to "former reservations" in Oklahoma is currently a matter of dispute with respect to the Creek Reservation. *See Murphy v. Royal*, 875 F.3d 896, 966 (10th Cir. 2017), *cert. granted*, 138 S. Ct. 2026 (May 21, 2018) (No. 17-1107); *McGirt v. Oklahoma*, Case No. PC-2018-1057 (Okla. Crim. App. 2019), *cert. granted*, 140 S. Ct. 659 (Dec. 13, 2019) (No. 18-9526).

AR000020.

In reaching his conclusion, the Assistant Secretary invoked the Indian canon of construction that "statutes are to be construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit." *Montana v. Blackfeet Tribe of Indians*, 471 U.S. 759, 766 (1985); AR000020. But the canon is inapplicable when "the [competing] interests at stake both involve Native Americans." *Utah v. Babbitt*, 53 F.3d 1145, 1150 (10th Cir. 1995); *Cherokee Nation of Oklahoma v. Norton*, 241 F. Supp. 2d 1374, 1380 (N.D. Okla. 2002). *See also N. Cheyenne Tribe v. Hollowbreast*, 425 U.S. 649, 655 n.7 (1976). Here, two Indian tribes have competing interests with regard to whether the UKB is legally permitted to conduct gaming in Tahlequah, Oklahoma, the capital of both tribes. The canon is therefore inapplicable in this case.[7] Inapplicability of the canon does not end the inquiry, however.

Plaintiffs raise four additional challenges to the Assistant Secretary's conclusion that the Cherokee Nation's "former reservation" is shared by the UKB for purposes of compliance with IGRA. The court addresses each in turn.

1. "Former reservation" as defined in 25 C.F.R. § 292.2

Plaintiffs argue that the "former reservation" decision is contrary to IGRA's requirements for tribal gaming on tribal trust lands acquired after October 17, 1988. They contend the Assistant Secretary bypassed the definition of "former reservation" contained in 25 C.F.R. § 292.2:

> Former reservation means lands in Oklahoma that are within the exterior boundaries of the last reservation that was established by treaty, Executive Order, or Secretarial Order for an Oklahoma tribe.

---

[7] Notably, the Department does not defend application of the canon. *See* Doc. 135, p. 27 n.3.

Plaintiffs reason that, had the Assistant Secretary applied the regulatory definition, he would have reached the inescapable conclusion that no treaty, Executive Order, or Secretarial Order ever established a reservation for the UKB, and the UKB accordingly has no "former reservation" as defined by the regulation.

The UKB defendants acknowledge that the Secretary has promulgated a regulation "*generally* defining the term 'former reservation,'" but they contend the Assistant Secretary's former reservation decision is not inconsistent with the general definition because the regulation is ambiguous as applied to this case. They and the Department defend the decision based upon the "highly unique facts presented" where

- neither IGRA nor regulations implementing IGRA "address the question of whether two federally recognized tribes, one of which was formed under express congressional authorization from the citizens of the other, can share the same former reservation for purposes of qualifying for the 'former reservation' exception;"

- Congress organized and separately recognized the UKB in the 1946 Act;

- the Secretary had approved the UKB's constitution; and

- the UKB's tribal headquarters is established in Tahlequah, Oklahoma, within the historic Cherokee reservation.

Doc. 135, p. 26; Doc. 136, p. 38; AR00020.

Though the argument has some equitable appeal, it misses the mark. This court is unpersuaded that the regulation is ambiguous as applied. No reservation has ever been established by treaty, Executive Order, or Secretarial Order for the UKB tribe. The Secretary promulgated § 292.2 as a regulation defining the term "former reservation" as used in IGRA, and the Assistant Secretary is bound by that definition. The statement of "highly unique facts" used by the Assistant Secretary to justify the 2012 Decision are therefore insufficient to qualify the UKB for IGRA's "former reservation" exception.

The Department argues that § 292.2 requires "only that the last reservation be for '*an* Oklahoma tribe.'" Doc. 135, p. 27 (emphasis added). That view is contrary to the language of § 2719(a)(2)(A)(i), which requires the lands to be "within the boundaries of *the Indian tribe's* former reservation" (emphasis added), not within the reservation of some other tribe in Oklahoma.

The Department also argues that IGRA provides for the existence of a former reservation to be "determined by the Secretary." Doc. 135, p. 27. This interpretation is contrary to the terms of § 2719 and § 292.2. The phrase "as defined by the Secretary" in § 2719 plainly refers to the boundaries of the Indian tribe's former reservation. And even if the phrase were to be construed to refer only to the term "former reservation," the Assistant Secretary abused his discretion by failing to apply the definition contained in § 292.2. The Secretary properly exercised his authority to define the term "former reservation" in § 292.2 for the purpose of implementing IGRA, but the Assistant Secretary improperly contorted the applicable law when he determined that the UKB tribe once had a reservation.

The Department points to language in the 2002 Appropriations Act that the Secretary of the Interior had "[t]he authority to determine whether a specific area of land is a 'reservation' for the purposes of [IGRA]." Doc. 135, p. 28 n.4, citing Pub. L. 107-63, § 134, 115 Stat. 414, 442-43. This language is consistent with the plain meaning of § 2719(a)(2)(A)(i) – that the Secretary has authority to determine whether particular lands fall within the boundaries of a former reservation.

2. IGRA's "Indian Lands" Requirements

Plaintiffs challenge the Assistant Secretary's decision that, once the parcel is taken into trust, the UKB may conduct gaming on it. AR000021. Plaintiffs contend this conclusion ignores IGRA's "Indian lands" requirement that a gaming tribe must possess and exercise jurisdiction over

the gaming site. IGRA provides that an Indian tribe may engage in Class II gaming only on Indian lands within such tribe's jurisdiction, and may engage in Class III gaming only on Indian lands. 25 U.S.C. § 2710(b)(1), (d)(1). The term "Indian lands" includes "any lands title to which is either held in trust by the United States for the benefit of any Indian tribe or individual . . . and over which an Indian tribe exercises governmental power." 25 U.S.C. § 2703(B).

This court concludes that the "Indian lands" requirement does not itself pose an impediment to gaming on the 2.03-acre parcel. The Tenth Circuit's decision in *Bernhardt* permits lands within the former Cherokee reservation to be taken into trust for the UKB Corporation. If the 2.03-acre parcel were to be placed into trust in compliance with IGRA's other requirements, it would then be within the UKB's jurisdiction and would be land over which the UKB would lawfully exercise governmental power.

3.  Prior Judicial Decisions

Plaintiffs argue that the "former reservation" decision is contrary to law established in three decisions in the Northern District of Oklahoma in which the UKB was a party.

The first decision is an unpublished order on a motion to dismiss filed by the Secretary of the Interior. In *United Keetoowah Band v. Secretary of the Interior*, No. 90-C-608-B (N.D. Okla. May 31, 1991), the court dismissed the UKB's first two claims for failure to exhaust administrative remedies and dismissed the UKB's third and fourth claims pursuant to Fed. R. Civ. P. 19 for failure to join the Nation as an indispensable party. The decision contains no holding relative to the issue of whether the former reservation of the Nation is also the former reservation of the UKB for the purposes of applying the exception under 25 U.S.C. § 2719(a)(2)(A)(i). The holding was strictly procedural—whether the Nation was an indispensable party to an action in which the UKB was

asserting entitlement to trust lands within the Nation's "former reservation" without the Nation's consent.

The second decision is an order on motions for summary judgment in a suit where the UKB was the sole remaining plaintiff.  In *Buzzard v. Oklahoma Tax Commission*, No. 90-C-848-B, 1992 U.S. Dist. LEXIS 22864 (N.D. Okla. March 3, 1992), *aff'd*, 992 F.2d 1073 (10th Cir. 1993), the UKB sought injunctive relief prohibiting the enforcement of Oklahoma's tobacco taxing statutes in smokeshops owned and licensed by the UKB and located within the boundaries of the original Cherokee Indian Reservation.  The UKB argued that it was entitled to exercise tribal sovereignty over the lands because (1) the lands are reservation lands, and the UKB is heir to unallotted smokeshop sites located within the limits of the original Cherokee Indian Reservation; and (2) the smokeshop sites, while held by the UKB in fee, were similar to trust lands.  Pertinent to the issue presently before this court, Judge Brett wrote the following

> The UKB . . . offers no authority to support its claim that it is heir to the original Cherokee Indian Reservation.  The Act of August 10, 1946 simply recognizes the UKB as a "band of Indians residing in Oklahoma"; it does not set aside a reservation for the UKB or acknowledge the UKB's jurisdiction over the original Cherokee Indian Reservation.

*Id.* at *10.  The Court concluded that "UKB has failed to show any treaty or Congressional act establishing UKB's 'inherited' right or claim to reservation land within the boundaries of the old Cherokee Indian Reservation."  *Id.* at *13.[8]  The Tenth Circuit affirmed, stating that "[t]he UKB

---

[8] The Secretary and Assistant Secretary were not parties to *Buzzard* and therefore are not precluded from asserting a position on the "former reservation" issue contrary to the holding in that case.

has not shown that its smokeshops are located on land validly set apart for the UKB's use by the federal government." 992 F.2d at 1076.

Though *Buzzard* did not involve § 2719(a)(2)(A)(1) of IGRA or the regulatory definition of "former reservation" in 25 C.F.R. § 292.2, its conclusion provides supportive precedent for the conclusions set forth in Section E(1) above.

The third decision is *United Keetoowah Band v. Mankiller*, No. 92-C-585-B (N.D. Okla. Jan. 27, 1993), *attached to and aff'd*, 2 F.3d 1161 (10th Cir. 1993). There, the district court dismissed for want of an indispensable party, the Cherokee Nation, and was affirmed. As in *United Keetoowah Band v. Secretary of the Interior*, the holding was procedural and the remaining language is dicta. Furthermore, the dicta pertains to the Nation's assertion of sole jurisdictional authority within the historic Cherokee reservation, an assertion recently rejected in *Bernhardt*.

4. <u>The Lack of a "Reasoned Analysis" for the Change of Interpretation</u>

When an agency departs from a prior interpretation of a statute that it is charged with implementing, it must justify the change of interpretation with a "'reasoned analysis.'" *Rust v. Sullivan*, 500 U.S. 173, 187 (1991) (quoting *Motor Vehicle Mfrs. Ass'n. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42 (1983)). Plaintiffs contend the "former reservation" decision is arbitrary and capricious because it constitutes a complete and unexplained about-face without providing a reasoned analysis.

Plaintiffs point to the Department's past findings that the Cherokee Nation possessed exclusive jurisdiction over the former Cherokee reservation. However, the Tenth Circuit concluded in *Bernhardt* that the Assistant Secretary has justified his change-in-position concerning the exclusivity of the Nation's jurisdiction over former Cherokee reservation land. *Bernhardt*, 936 F.3d at 1161 ("[t]he Assistant Secretary was justified in relying on the 1994 IRA Amendment and

the 1999 Appropriations Act as bases for changing the BIA's stance on the exclusivity of Nation jurisdiction . . .").

Plaintiffs also point to the Department's change in position with respect to the separate and distinct issue of whether the UKB has a "former reservation."[9]  As previously discussed, the Assistant Secretary erroneously used an Indian canon of construction and failed to justify the Department's about-face on this issue with a reasoned analysis.

For the foregoing reasons, this court concludes that the Assistant Secretary's "former reservation" decision was arbitrary, capricious, an abuse of discretion, and contrary to law.

## III.  Conclusions

Pursuant to *Cherokee Nation v. Barnhardt*, statutory authority exists for the Secretary of the Interior to take land within the boundaries of the original Cherokee territory in Oklahoma into trust for the benefit of the UKB Corporation.  In this case, however, the UKB's Amended Application sought to have a 2.03-acre parcel accepted into trust for the specific purpose of conducting gaming.  AR000800.  As explained above, IGRA and its implementing regulatory definition of "former reservation" do not permit Indian gaming on the 2.03- acre parcel.  The Assistant Secretary's conclusion that the UKB may conduct gaming on the property pursuant to 25 U.S.C. § 2719 (a)(2)(A)(i) and the implementing regulations set forth in 25 C.F.R. Part 292, was therefore arbitrary, capricious, an abuse of discretion, and contrary to law.  It necessarily follows that the Assistant Secretary's decision to take the 2.03-acre parcel into trust for the benefit

_____

[9] *See* Doc. 30-17, AR000450-452 (1987 Decision of the Assistant Secretary finding, among other things, that the 1946 Act did not create a reservation for the UKB, and that the UKB "has never had a reservation in Oklahoma"); Doc. 119-7, AR004948 (August 6, 2008 Regional Director decision stating:  "The UKB does not have a 'former reservation' of its own . . . there are no treaties, statutes or Executive Orders that set aside lands for the UKB.").

of the UKB Corporation for the purpose of conducting Indian gaming was arbitrary, capricious, an abuse of discretion, and contrary to law.

Accordingly, the court shall enter a Judgment declaring that that the July 30, 2012 decision of the Assistant Secretary – Indian Affairs, U.S. Department of the Interior, to take the 2.03-acre parcel into trust for the benefit of the United Keetoowah Band of Cherokee Indians in Oklahoma Corporation for the purpose of conducting Indian gaming was arbitrary and capricious and contrary to law; that the Cherokee Nation's "former reservation" is not the "former reservation" of the United Keetoowah Band of Cherokee Indians in Oklahoma under 25 U.S.C. § 2719(a)(2)(A)(i) and 25 C.F.R. § 292.9; and that because the 2.03-acre parcel is not within the "former reservation" of the UKB, gaming regulated by the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701-2721, cannot be conducted on the 2.03-acre parcel pursuant to 25 U.S.C. § 2719(a)(2)(A)(i).

Defendants David Bernhardt, in his official capacity as Secretary of the Interior, U.S. Department of the Interior, and Tara Katuk Mac Lean Sweeney, in her official capacity as Assistant Secretary – Indian Affairs, U.S. Department of the Interior, are hereby enjoined from taking the 2.03-acre parcel into trust for gaming purposes for the United Keetoowah Band of Cherokee Indians in Oklahoma Corporation.

IT IS SO ORDERED this 24th day of March, 2020.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE